IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JIMMY R. NICKS and JAMES EARL )
PATRICK, individually and on behalf of all )
persons similarly situated, )
                                                   )
      Plaintiffs, )
                                                   )
       v. ) No. 16-cv-6446
                                                   )
KOCH MEAT CO., INC., d/b/a KOCH FOODS, )
KOCH FOODS OF MISSISSIPPI, LLC, and JET )
POULTRY SERVICES, INC., )
                                                   )
     Defendants. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On June 21, 2016, Plaintiffs Jimmy R. Nicks ("Nicks") and James Earl Patrick ("Patrick"), individually and on behalf of all persons similarly situated, filed a Collective Class Action Complaint against Defendants Koch Meat Co., Inc. d/b/a Koch Foods ("Koch Meat"), Koch Foods of Mississippi, LLC ("Koch Foods of Mississippi"), and JET Poultry Services, Inc. ("JET"), seeking relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA"). (R.1). JET moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and/or improper venue. (R.37). Koch Meat and Koch Foods of Mississippi (collectively, the "Koch Defendants") separately moved to dismiss the Complaint on similar grounds. (R.40). In the alternative to dismissal, all Defendants request a transfer to the Southern District of Mississippi pursuant to 28 U.S.C. §§ 1404 or 1406.

The Court now considers the Koch Defendants' jurisdiction and venue challenge. (R.40). For the following reasons, the Court denies that motion without prejudice to refile after conducting the limited jurisdictional and venue discovery described herein.

## BACKGROUND

I.  **FLSA Complaint Allegations**

Plaintiffs Nicks and Patrick are Mississippi residents who were "previously employed by Defendants to catch and cage chickens as . . . member[s] of a live-haul crew[.]" (R.1, Compl. ¶ 3-4). Plaintiffs allege that the Koch Defendants operate "one of the largest vertically integrated poultry processors in the United States, with locations across Alabama, Georgia, Illinois, Mississippi, Ohio and Tennessee." (*Id.* ¶ 16). As part of that enterprise, the Koch Defendants engage third-party contractors—such as JET—to employ chicken catchers—such as Plaintiffs— for their live-haul crews, who then "travel to [Koch] farms to capture Koch's chickens and place them in Koch's cages, for transport to the Koch poultry processing plants." (*Id.* ¶¶ 24-25, 31).[1] According to Plaintiffs, all three Defendants play a role in hiring live-haul crews, supervising live-haul crews, and determining and recording "the piece rate and number of loads captured in order to compensate the live-haul crews." (*Id.* ¶¶ 32-34, 41, 45-46). With respect to compensation in particular, Plaintiffs allege that "Defendants paid [them] and the FLSA Collective a piece rate basis, regardless of the number of hours worked, and failed to pay overtime as required by federal law." (*Id.* ¶ 59). Accordingly, Plaintiffs now bring a claim for overtime wage violations against the Koch Defendants and JET as joint employers under the FLSA. (*Id.* ¶¶ 47-48, 68, 72-73). Plaintiffs purport to bring this FLSA collective action on behalf of "[a]ll individuals employed by [Koch Meat, Koch Foods, and/or JET] as members of live-haul, chicken catching crews in the United States, and who were paid on a piece rate and did

---

[1] Throughout the Complaint, Plaintiffs refer to Koch Meat and Koch Foods as a collective, "Koch." (*Id.* ¶ 16).

not receive overtime compensation from the three years preceding the date of the filing of this Complaint." (*Id.* ¶ 14).

## II. Jurisdictional Record

In terms of jurisdictional allegations, Plaintiffs allege that Defendant Koch Meat is "an Illinois corporation headquartered in Park Ridge, Illinois, with facilities in Alabama, Georgia, Mississippi, Tennessee, and Illinois[.]" (*Id.* ¶ 5). Koch Foods of Mississippi "is a Mississippi entity headquartered in Morton, Mississippi, with processing plants in Mississippi." (*Id.* ¶ 7). JET, meanwhile, "is a Mississippi corporation headquartered in Summit, Mississippi, providing staffing of live-haul chicken-catcher crews for the Koch Defendants." (*Id.* ¶ 9).

As Mississippi citizens, Defendants JET and Koch Foods of Mississippi challenge the Court's personal jurisdiction over them under Federal Rule of Civil Procedure 12(b)(2). (R.37, R.40). JET has submitted an affidavit from its Director and Vice President, attesting that JET has never advertised in Illinois, conducted or solicited business in Illinois, or appointed an agent for service of process in Illinois. (R.63-1, Corrected Armstreet Decl. ¶¶ 5-7). Instead, all of JET's "employees, officers, agents and shareholders reside in Mississippi," where JET manages "a contract with Koch Farms of Mississippi to catch chickens in Morton, Mississippi." (*Id.* ¶¶ 9-11, 15).[2] Koch Farms of Mississippi pays JET "for the chickens [JET's] workers catch in Mississippi[,]" while JET then "pays its workers, who are Mississippi residents, in Mississippi." (*Id.* ¶¶ 12-13). According to its employment files, "the named Plaintiffs and each putative collective action member who has filed a consent in this action was also a resident of Mississippi when hired by [JET]." (*Id.* ¶ 14). JET maintains its pay records and employment files in Mississippi. (*Id.* ¶ 16).

---

[2] The original Armstreet Declaration, submitted by JET, identified the relevant contracting party as named Defendant, Koch *Foods* of Mississippi. (R.38-1, Armstreet Decl. ¶¶ 9-10). The Corrected Armstreet Declaration clarified that the signatory was actually Koch *Farms* of Mississippi, another Mississippi-based Koch entity.

3

Koch Foods of Mississippi, too, has submitted several employee affidavits to contest personal jurisdiction in Illinois. (R.42-1). In particular, Lance Buckert—Chief Financial Officer of Koch Foods Incorporated, which is the sole member of Koch Foods of Mississippi and the sole stockholder of Koch Meat—attested that Koch Foods of Mississippi does not: (i) have an office in Illinois; (ii) own real property in Illinois; (iii) employ anyone in Illinois; (iv) pay income or property taxes in Illinois; or (v) have a telephone listing or phone number in Illinois. (R.42-1, Buckert Decl. ¶¶ 2-9). In addition, Laney White, Koch Foods of Mississippi's "Complex Manager," attested that its poultry processing business, including the operation of a slaughter plan in Morton, Mississippi (the "Slaughter Plant"), is limited to the State of Mississippi. (R.42-1, White Decl. ¶¶ 4-8). Ronnie Joe Keyes, its "Live Production Manager," meanwhile, explained that he "oversees the production of live broiler chickens before they are delivered to the Slaughter Plant for processing" – commonly referred to as "grow-out" operations. (R.42-1, Keyes Decl. ¶ 5). As part of the grow-out operations, JET "catches broiler chickens on the growers' farms and places them in cages that are loaded onto poultry transport vehicles for delivery to the Slaughter Plant." (*Id.* ¶ 7). All of these "live-haul services related to chickens supplied to the Slaughter Plant for processing take place in Mississippi." (*Id.* ¶ 8). In addition, Keyes appears to be a signatory on the "Poultry Catcher Agreement" between JET and "Koch Farms of Mississippi, LLC." (*Compare id. with* R.63-1 at 4).

For its part—although not contesting personal jurisdiction in Illinois—Koch Meat "does not have any business records relating to any services provided" by JET, and "does not control the pay policies or the day-to-day operations" of Koch Foods of Mississippi. (R.42-1, Buckert Decl. ¶ 12; R.62-4, Buckert Supplemental Decl. ¶ 4). Koch Meat, moreover, does not "engage in

any live haul operations" or "own any facilities that process any live chickens." (R.42-1, Buckert Decl. ¶¶ 10-11).

## **LEGAL STANDARD**

A motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2); *Central States v. Phencorp. Reins. Co.*, 440 F.3d 870, 875 (7th Cir. 2006). In analyzing a Rule 12(b)(2) motion, courts may consider matters outside of the pleadings. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Without the benefit of an evidentiary hearing, the plaintiff "bears only the burden of making a prima facie case for personal jurisdiction." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010). Under such circumstances, courts take "the plaintiff's asserted facts as true and resolve any factual disputes in its favor." *Id.* Where the plaintiff fails to refute facts contained in the defendant's affidavit, however, courts accept those facts in the affidavit as true. *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

Under Rule 12(b)(3), a party may move for dismissal of an action that is filed in an improper venue. *See* Fed.R.Civ.P. 12(b)(3). Once a defendant challenges the plaintiff's choice of venue, the plaintiff bears the burden of establishing that it filed its case in the proper district. *See Gilman Opco LLC v. Lanman Oil Co.*, No. 13-CV-7846, 2014 WL 1284499, at *2 (N.D. Ill. Mar. 28, 2014). Under Rule 12(b)(3), "the district court assumes the truth of the allegations in the plaintiff's complaint, *unless* contradicted by the defendant's affidavits." *Deb v. SIRVA, Inc.*, No. 14-2484, 2016 WL 4245497, at *5 (7th Cir. Aug. 11, 2016) (emphasis in original); *see also Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809-10 (7th Cir. 2011) (courts may consider matters outside of the pleadings in deciding a venue motion). Against a Rule 12(b)(3)

5

challenge, the court must resolve any factual disputes and draw all reasonable inferences in the plaintiff's favor. *See Gilman*, 2014 WL 1284499 at *2. When venue is improper, the Court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *See* 28 U.S.C. § 1406(a).

## ANALYSIS

I. **Personal Jurisdiction**

   A. **Applicable Legal Principles**

"In a federal question case . . . a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). Here, the federal statute on which Plaintiffs rely—the FLSA—does not authorize nationwide service of process. *See Berger v. PIKR, Ltd.*, No. 14 C 8543, 2015 WL 2208200, at *3 (N.D. Ill. May 8, 2015); 29 U.S.C. § 216(b) ("An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction"). Accordingly, the Court must analyze Defendants' amenability to personal jurisdiction under the Illinois long-arm statute. *See Mobile Anesthesiologists*, 623 F.3d at 443. That statute "permits the exercise of personal jurisdiction if it would be allowed under either the Illinois Constitution or the United States Constitution." *Id.* (citing 735 ILCS 5/2-209(c)). "Thus, the [Illinois] statutory question merges with the constitutional one[.]" *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). Because the Seventh Circuit has recognized that "there is no operative difference between these two constitutional limits," the key question is "whether the exercise of personal jurisdiction would violate federal due process." *Mobile Anesthesiologists*, 623 F.3d at 443 (citations omitted).

6

Personal jurisdiction may be either general or specific. *See Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (citing *Daimler v. Bauman*, 134 S. Ct. 746, 753 (2014)). A court may assert general jurisdiction over a foreign corporation "to hear any and all claims against it" only "when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler*, 134 S. Ct. at 751 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). Specific jurisdiction, on the other hand, "is available for a suit that arises out of the forum-related activity." *Advanced Tactical*, 751 F.3d at 800. Three requirements exist to establish specific jurisdiction: "(1) the defendant must have purposely availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

B. **Koch Foods of Mississippi's Jurisdictional Challenge**

1. **"Alter Ego" Jurisdiction**

Plaintiffs argue that the Court may exercise both general and specific jurisdiction over Koch Foods of Mississippi because it "is so inextricably intertwined with Koch Meat that they are one in the same." (R.56, Response Br. at 1). As evidence of this purported "alter ego" relationship, Plaintiffs point to: (i) a webpage from "Koch Foods, Inc." stating that "Koch Foods is a leading poultry processor in the United States with [various] locations" and "13,000 employees across our corporate office, processing locations and distribution centers" (R.56-2); (ii) corporate communications stating that "Koch Foods [Inc.] will spend a total of $35 million to

expand two poultry processing plants in Mississippi" (R.56-1); (iii) documents reflecting an overlap in officers and directors, and external counsel, between Koch Foods, Inc., Koch Meat, and Koch Foods of Mississippi (R.56-3; R.56-4; R.56-5; R.56-6; R.56-7; R.56-8; and R.56-9); (iv) documents reflecting an Illinois mailing addresses for Koch Farms of Mississippi and/or Koch Foods of Mississippi (R.56-10 (real estate records); R.56-11 (UCC filings); R.71-1, Ex. A (OHSA News Release, "Headquartered in Park Ridge, Illinois, Koch Foods of Mississippi is a subsidiary of Koch Foods, Inc.")); and (v) litigation filings in which Koch Foods, Inc. prosecutes the claims of its affiliates, and/or its affiliates assume its jurisdictional ties (R.56-12; R.56-13).

Under Seventh Circuit law, "due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). Against this presumption, Illinois courts recognize two methods by which plaintiffs may establish "minimum contacts" via imputation between related entities – (1) providing "evidence that would justify piercing the corporate veil[,]" or (2) demonstrating that one entity exercised an "unusually high degree of control" over the other. *See id.* at 945; *Salon Grp., Inc. v. Salberg*, 156 F. Supp. 2d 872, 876 (N.D. Ill. 2001); *see also Schultheis v. Cmty. Health Sys., Inc*., No. 11-0435-DRH, 2012 WL 253366, at *2-3 (S.D. Ill. Jan. 26, 2012) (noting the same and observing that plaintiffs offered a "personnel policy" reflective of the "daily, operational control that is the sine qua non of an alter ego relationship").

Construing the Complaint "liberally, in its entirety, and with every inference drawn in favor" of Plaintiffs, *see Phencorp*, 440 F.3d at 877-78, Plaintiffs have demonstrated (i) an overlap in directors and officers among Koch entities; (ii) a tendency by "Koch Foods, Inc." to

8

issue corporate communications and filings on behalf of its affiliates; and (iii) the existence of a "vertically integrated" enterprise in which "Koch" exerts some control at each stage of the business. Thus, while Plaintiffs' allegations and exhibits support the inference that the Koch Defendants "work together as a vertically integrated enterprise[,]" they do not "raise reasonable inferences about the remaining [imputation] factors, including the several that have to do with the formal separation of Defendants' assets or with Defendants' internal governance structure." *See Mountain Link Associates, Inc. v. Chesapeake Energy Corp.*, No. 2:13-CV-16860, 2014 WL 4851993, at *9 (S.D.W. Va. Sept. 29, 2014). The Court recognizes, however, that this information is within the Koch Defendants' control.

### 2. Jurisdictional Discovery over Koch Foods of Mississippi

Jurisdictional discovery is appropriate here. As the Seventh Circuit has observed, "[t]he fact that a corporation has only one single shareholder is not proof that the corporation is the 'alter ego' of that shareholder." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 381 (7th Cir. 2008) (citation omitted). Similarly, "having common officers and directors . . . is insufficient to justify disregarding the corporate form[.]" *Id.* It is within the Court's discretion, though, to permit targeted jurisdictional discovery on Plaintiffs' "alter ego" theory as to Koch Foods of Mississippi. *See Reimer*, 230 F.3d at 947; *see also Novo 1, Inc. v. Levendo, LLC*, No. 10-CV-892, 2011 WL 3047679, at *2 (E.D. Wis. July 25, 2011) ("the court was not required to conclusively determine that Hines is the alter ego of Levendo before allowing Novo 1 to conduct a limited deposition of Hines and to make limited written discovery requests").

Here, the factual record is ambiguous as to the Koch Defendants' internal structure. *See Gilman*, 2014 WL 1284499 at *6 (jurisdictional discovery is warranted where "the factual record

9

is at least ambiguous or unclear on the jurisdiction issue"). While Koch Foods of Mississippi represents that Koch Meat is *not* its parent (R.62, Reply Br. at 4), Plaintiffs are suing "Koch Meat Co., Inc., *d/b/a Koch Foods*." Lance Buckert, the Chief Financial Officer of Koch Foods Incorporated with "personal knowledge of the assets and operations of [its] subsidiaries," attested that "Koch Foods Incorporated is the sole member of Koch Foods of Mississippi, LLC and is the sole stockholder of Koch Meat Co., Inc." (R.42-1, Buckert Decl. ¶¶ 2-3). Koch Foods, Inc.—not Koch Meat—likewise appears in many of Plaintiffs' referenced exhibits. Given this ambiguity, the Court permits Plaintiffs to take the deposition of Lance Buckert concerning paragraphs 2-3 of his initial declaration. (*Id.*). Plaintiffs may inquire about the "assets and operations" of Koch Foods of Mississippi and/or Koch Farms of Mississippi as related to an "alter ego" showing.

In addition, the factual record is unclear as to the "control" exerted by "Koch Meat Co., Inc., d/b/a Koch Foods" over the chicken catching and/or caging business. *See Gilman*, 2014 WL 1284499 at *6. While Plaintiffs point to paragraphs 18-27 and 31-35 of the Complaint for their "control" allegations, (R.56, Response Br. at 7), these allegations conflate the two named Koch Defendants. Moreover, the submitted affidavits call into question the accuracy of these generalized "Koch" allegations as related to Koch Meat's control over and/or involvement in "the chicken catching operation." The Buckert Declaration, for example, states that "Koch Meat" does not "own any live chickens or engage in any live haul operations[,]" nor does it "own any facilities that process any live chickens." (R.42-1, Buckert Decl. ¶¶ 10-11). *Contra Heath v. Perdue Farms, Inc.*, 87 F. Supp. 2d 452, 454-55 (D. Md. 2000) (observing that "Defendant Perdue Farms, Inc.," not any affiliate, "at all times, retains ownership of chickens"). Rather, it is Koch Foods of Mississippi—a Mississippi entity—that oversees "grow-out" operations,

10

including the work of live-haul crews, and operates the relevant poultry processing facilities in Mississippi. (R.42-1, White Decl. ¶¶ 4-8; R.42-1, Keyes Decl. ¶¶ 3-9). The Supplemental Buckert Declaration, meanwhile, states that "Koch Meat does not control the pay policies or the day-to-day operations of Koch [Foods of] Mississippi." (R.62-4, Buckert Supplemental Decl. ¶ 4).

These declarations, however, do not speak to whether "Koch Meat Co., Inc., *d/b/a Koch Foods*"—that is, Koch Foods, Incorporated—exerts any operational control over Koch Foods of Mississippi and/or Koch Farms of Mississippi. *Contra Sullivan v. Sony Music Entm't*, No. 14 CV 731, 2014 WL 5473142, at *5 (N.D. Ill. Oct. 29, 2014) (jurisdictional discovery is unwarranted where "the defendant has provided affirmative evidence that refutes the plaintiff's assertion of jurisdiction"). Given this ambiguity, and because Plaintiffs' jurisdictional assertions are not "clearly frivolous," the Court permits Plaintiffs to take the deposition of Lance Buckert concerning paragraphs 10-11 of his initial declaration, and paragraph 4 of his supplemental declaration. Plaintiffs may further examine Buckert concerning Koch Foods, Incorporated's control over and/or involvement in the chicken-catching operations of Koch Foods of Mississippi and/or Koch Farms of Mississippi. *See Gilman*, 2014 WL 1284499 at *6. The Court also grants Plaintiffs the opportunity to conduct a Rule 30(b)(6) deposition of Koch Foods of Mississippi concerning their "alter ego" theory of jurisdiction. In particular, Plaintiffs may examine the 30(b)(6) designee as to: (i) the "veil-piercing" factors identified by the Seventh Circuit in *Judson*, 529 F.3d at 379; and (ii) the "extraordinary control" factors identified by the district court in *Schultheis*, 2012 WL 253366 at *3. To the extent there is overlap between the two theories, *see Wells v. Edison Int'l, Inc.*, No. 09 C 1728, 2009 WL 1891801, at *5 (N.D. Ill. July 1, 2009), the Court prohibits the elicitation of duplicative testimony.

For the stated reasons, the Court permits limited jurisdictional discovery relevant to Plaintiffs' "alter ego" theory of jurisdiction. The parties shall complete these depositions by November 18, 2016. The Court therefore denies Koch Foods of Mississippi's Rule 12(b)(2) motion to dismiss, without prejudice to refile once this discovery is completed.

## II. Venue

The Court next considers the Koch Defendants' venue challenge under Rule 12(b)(3).

### A. 28 U.S.C. § 1391(b)(1)

Plaintiffs first argue that venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(1). The Court reserves opinion on this issue until it determines the personal jurisdiction challenges brought by JET and, if it decides to refile, Koch Foods of Mississippi. *See* 28 § 1391(b)(1) ("A civil action may be brought in a judicial district in which any defendant resides, *if all defendants are residents of the State* in which the district is located") (emphasis added); *see also* 28 U.S.C. § 1391(c)(2) ("an entity with the capacity to sue and be sued in its common name . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question").

### B. 28 U.S.C. § 1391(b)(2)

Plaintiffs next argue that venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(2). Section 1391(b)(2) provides that "a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" As the Court has previously recognized, the test "is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in a particular district." *Allstate Life*

*Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 877 (N.D. Ill. 2015).

According to Plaintiffs, a "substantial portion" of the activities giving rise to their FLSA claim occurred in Illinois, where Koch Meat issues "[a]ll compensation policies, employment control and protocols" for its affiliates and contractors to use in poultry processing operations. (R.56, Response Br. at 1-2, 7, 12-13, 17). The Koch Defendants, on the other hand, argue that this case concerns Mississippi chicken catchers, hired by JET, who were allegedly denied overtime compensation in Mississippi. (R.1, Compl. ¶¶ 3-4, 7, 9, 14, 21, 31-35; R.63-1, Corrected Armstreet Decl. ¶¶ 13-21; R.42-1, Keyes Decl. ¶¶ 3-9; R.42-1, Buckert Decl. ¶ 12; R.62-4, Buckert Supplemental Decl. ¶ 4)). The operative activities giving rise to Plaintiffs' overtime compensation claims, the Koch Defendants argue, took place in Mississippi, and Mississippi is the situs of relevant witnesses and relevant payroll and employment records. (*Id.*).

Venue may be proper in more than one court. *See Armstrong v. LaSalle Bank Nat. Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009). Thus, while the Rule 12(b)(3) record reflects that the Southern District of Mississippi may be a proper venue under 28 U.S.C. § 1391(b)(2), the Court cannot say—in light of Plaintiffs' position, and without the benefit of venue discovery—that Illinois was not *also* a situs of a "substantial portion of the activities giving rise" to their FLSA claim. In particular, Plaintiffs argue that the "primary defendant" in this case, Koch Meat, has a "corporate policy and practice of failing to give overtime pay to chicken catchers in violation of the FLSA." (R.56, Response Br. at 1). The Complaint, meanwhile, alleges that Defendants "determined and recorded the piece rate and number of loads captured in order to compensate the live-haul crews" and "failed to pay overtime as required by federal law" pursuant to "common pay practices." (R.1, Compl. ¶¶ 32, 44-46, 58-59). Viewing the Complaint "liberally, in its entirety, and with every inference drawn in favor" of Plaintiffs, *see Phencorp*, 440 F.3d at 877-

78, these allegations—combined with the "control" allegations discussed above—raise the inference that "Koch Meat, d/b/a Koch Foods," does set the relevant wage and employment policies.

Defendants' evidentiary submissions, moreover, do not conclusively refute this inference. While the Supplemental Buckert Declaration, for example, states that Koch Meat does not "control the pay policies" of Koch Foods of Mississippi, it does not speak to (i) whether Koch Foods, Incorporated plays any role in determining and/or controlling such pay policies; or (ii) whether Koch Meat has any role in determining and/or controlling the pay policies of Koch *Farms* of Mississippi. (R.62-4, Buckert Supplemental Decl. ¶ 4). JET's affidavits are likewise devoid of any indication that it—as opposed to any Koch entity—determined the relevant pay practices. (R.38-1; R.63-1). While the Poultry Catcher Agreement discusses compensation in consideration for JET's services, it does not discuss compensation between JET—or any Koch entity—and the individual chicken catchers. (R.63-1, Ex. A). Based on counsels' representations during a recent hearing, moreover, the record also reflects ambiguity concerning who pays, through JET, the individual chicken catchers in Mississippi – Koch *Foods* of Mississippi, or Koch *Farms* of Mississippi.

Given these ambiguities, the Court permits limited venue discovery concerning *who* sets and/or controls the relevant wage and employment policies for individual chicken catchers in Mississippi. *See Sanderson v. Spectrum Labs, Inc*., 248 F.3d 1159 (7th Cir. 2000) (recognizing district court discretion to permit limited venue discovery); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) ("where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues"). Plaintiffs may issue three targeted interrogatories on this topic to each of the Koch Defendants, in addition to examining

14

Lance Buckert concerning paragraph 4 of his supplemental declaration. Plaintiffs must issue these written interrogatories by November 1, 2016, and the Koch Defendants must provide written responses by November 11, 2016. The parties must complete the Buckert oral examination by November 18, 2016.

For the stated reasons, the Court denies the Koch Defendants' Rule 12(b)(3) motion, without prejudice to refile following the limited venue discovery described herein.[3]

## CONCLUSION

For the foregoing reasons, the Court denies the Koch Defendants' motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(3), without prejudice to refile after conducting the limited jurisdictional and venue discovery described herein. (R.40).

**Dated:** October 27, 2016

_____
AMY J. ST. EVE
United States District Court Judge

---

[3] The Court reserves opinion on (i) JET's motion to dismiss and/or transfer (R.37) and (ii) the Koch Defendants' request for transfer pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).