**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **JIMMY R. NICKS and JAMES EARL PATRICK, individually and on behalf of all other persons similarly situated,** | **Civil Action No. 1:16-cv-06446** |
| **Plaintiffs,** | **Collective Action Pursuant to 29 U.S.C. § 216(b)** |
| **-against-** | |
| **KOCH FOODS, INC., *et al.*,** | **Hon. Amy J. St. Eve** |
| **Defendants.** | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**THE KOCH DEFENDANTS' MOTIONS TO DISMISS,**
**OR IN THE ALTERNATIVE, TRANSFER VENUE [Dkt. NOS. 109-110]**

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     PROCEDURAL HISTORY ......................................................................... 5

III.    FACTUAL BACKGROUND ....................................................................... 8

      A.    The Koch Defendants Act As One Entity .......................................... 8

      B.    The Koch Defendants' Operations ................................................... 13

      C.    Plaintiffs' Claims ............................................................................ 19

      D.    The Koch Defendants Are All Joint Employers of Plaintiffs And The FLSA Collective .................................................................................... 20

IV.    ARGUMENT ............................................................................................ 22

      A.    Venue is Proper In This District ...................................................... 22

            1.    Venue is proper under Section 1391(b)(1) ................................ 22

            2.    Venue is Proper Under Section 1391(b)(2) .............................. 25

            3.    Venue is Proper Under Section 1391(b)(3) .............................. 28

      B.    The Court Should Decline To Discretionarily Transfer This Action Under the Section 1404(a) Factors ................................................................. 29

            1.    Defendants Have Failed To Establish that Venue Would Be Proper In Mississippi for All Koch Defendants .................................... 30

            2.    Transfer Will Not Serve The Convenience Of the Parties ......... 30

            3.    The Public Interest Factors Do Not Weigh In Favor Of Transfer ........... 33

      C.    Plaintiffs Have Sufficiently Alleged An FLSA Claim Against All Koch Defendants Pursuant To Rule 12(b)(6) .......................................................... 34

            1.    Legal Standard ........................................................................ 34

             2.    Plaintiffs Have Sufficiently Alleged An Alter Ego Theory of Liability for The FLSA Claims Against All Koch Defendants .................... 34

            3.    Plaintiffs Have Sufficiently Alleged That Defendants Are Joint Employers ........................................................................................ 37

      D.    Plaintiffs Have Standing to Pursue Claims Against All Koch Defendants ......... 39

1.    Legal Standard ............................................................................ 39

2.    Plaintiffs Have Standing Based On Their Alter Ego Theory .................... 40

3.    Plaintiffs Have Sufficiently Pleaded An Injury Traceable To The Actions of Each Koch Defendant .............................................................. 42

4.    Standing Should Be Deferred Until After The Court Decides Conditional Certification ............................................................................ 43

V.    CONCLUSION ................................................................................ 44

**TABLE OF AUTHORITIES**

**Cases**                                                                                            **Page(s)**

*A.H. Phillips, Inc. v. Walling*,
   324 U.S. 490 (1945)................................................................................... 43

*ADEMA Tech., Inc. v. Eiffert*,
   No. 12-cv-01139-CMA-BNB, 2014 WL 1099770 (D. Colo. Mar. 19, 2014) ........................ 40

*Adhikari v. KBR, Inc.*,
   No. 15-cv-1248, 2016 WL 4162012 n.3 ................................................................. 24

*Amoco Oil Co. v. Mobil Oil Corp.*,
   90 F. Supp. 2d 958 (N.D. Ill. 2000) .................................................................... 30, 31

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................... 34

*Betancourt v. Maxim Healthcare Servs., Inc.*,
   No. 10-C-4763, 2011 WL 1548964 (N.D. Ill. Apr. 21, 2011)................................................. 41

*Bollinger Shipyards Lockport, L.L.C. v. Huntington Ingalls Inc.*,
   2015 WL 65298 (E.D. La. 2015) ........................................................................ 33

*Brown v. ABM Indus., Inc.*,
   No. 15-c-6729, 2015 WL 7731946 (N.D. Ill. Dec. 1, 2015)............................................ passim

*Brown v. Bandai Am., Inc.*,
   No. 01-0442R, 2001 WL 720464 (N.D. Tex. Jun. 25, 2001) ................................................. 23

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)................................................................................... 24

*Camp v. Gress*,
   250 U.S. 308, 39 S.Ct. 478, 63 L.Ed. 997 (1919).................................................... 24

*Coffey v. Van Dorn Iron Works*,
   796 F.2d 217 (7th Cir. 1986) ........................................................................ 29, 30

*Cox v. Sherman Capital LLC*,
   No. 1:12-CV-01654-TWP, 2014 WL 4370680 (S.D. Ind. Sept. 3, 2014) ............................... 39

*Crouch v. Guardian Angel Nursing, Inc.*,
   No. 3:07–cv–00541, 2009 WL 3737887 (M.D. Tenn. Nov. 4, 2009) .................................... 31

*Cuff v. Trans States Holdings, Inc.*,
   768 F.3d 605 (7th Cir. 2014) ........................................................................ 38

*Deb v. SIRVA, Inc.*,
   No. 14-2484, --- F.3d ---, 2016 WL 4245497 (7th Cir. Aug. 11, 2016) ............................ 30, 31

*Earley v. BJ's Wholesale Club, Inc.*,
   No. 06–cv–3529 (WHP), 2007 WL 1624757 (S.D.N.Y. June 4, 2007) .................................. 27

*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*,
  618 F.3d 1153 (10th Cir. 2010) ..................................................................................... 31

*Evancho v. Sanofi–Aventis U.S. Inc.*,
  No. 07–cv–00098 (SI), 2007 WL 1302985 (N.D. Cal. May 3, 2007) ..................................... 27

*Evers v. Astrue*,
  536 F.3d 651 (7th Cir. 2008) ..................................................................................... 40

*Falcon v. Starbucks Corp.*,
  580 F. Supp. 2d 528 (S.D. Tex. 2008) .......................................................................... 43

*Farrior v. George Weston Bakeries Distrib., Inc.*,
  No. 08–cv–2705 (JFB)(WDW), 2009 WL 113774 (E.D.N.Y. Jan. 15, 2009) ......................... 27

*Faur v. Sirius Intern. Ins. Corp.*,
  391 F. Supp. 2d 650 (N.D. Ill. 2005) ....................................................................... 22, 23

*Federated Dep't Stores, Inc. v. U.S. Bank Nat'l Ass'n*,
  No. 00 C 6169, 2001 WL 503039 (N.D. Ill. May 11, 2001) ................................................ 30

*First Nat'l Bank v. El Camino Res., Ltd.*,
  447 F. Supp. 2d 902 (N.D. Ill. 2006) ............................................................................ 30

*Horihan v. Hartford Ins. Co. of the Midwest*,
  979 F. Supp. 1073 (E.D. Tex. 1997) ................................................................... 23, 25, 26

*Hughes v. Scarlett's G.P., Inc.*,
  No. 15-CV-5546, 2016 WL 4179153 (N.D. Ill. Aug. 8, 2016) ............................................ 34

*In re Enterprise Rent–A–Car Wage & Hour Emp't Prac. Litig.*,
  683 F.3d 462 (3d Cir. 2012).......................................................................................... 37

*Int'l Fin. Servs. v. Chromas Tech. Canada, Inc.*,
  356 F.3d 731 (7th Cir. 2004) ...................................................................................... 40

*IP Innovation L.L.C. v. Lexmark Int'l*,
  289 F. Supp. 2d 952 (N.D. Ill. 2003) ............................................................................ 28

*Jirak v. Abbott Lab., Inc.*,
  566 F. Supp. 2d 845 (N.D. Ill. 2008) ............................................................................ 42

*Judson v. Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
  529 F.3d 371 (7th Cir. 2008) ...................................................................................... 35

*Kelly v. Bluegreen Corp.*,
  256 F.R.D. 626 (W.D. Wis. 2009) ................................................................................ 42

*Knowlton v. Allied Van Lines, Inc.*,
  900 F.2d 1196 (8th Cir. 1990) .................................................................................... 23

*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*,
  422 F.3d 490 (7th Cir. 2005) ...................................................................................... 39

*Lee v. City of Chicago*,
  330 F.3d 456 (7th Cir. 2003) ................................................................................. 39, 40

*Lee v. Love's Travel Stops & Country Stores, Inc.*,
    No. 15-cv-7774, 2015 WL 6742074 (N.D. Ill. Nov. 3, 2015) ................................................. 29

*Levenstein v. Salafsky*,
    164 F.3d 345 (7th Cir. 1998) ........................................................................................ 34

*Mackereth v. Kooma, Inc.*,
    No. 14-04824, 2015 WL 2337273 (E.D. Pa. May 14, 2015)........................................... 39

*My Canary LLC v. Susieair, LLC*,
    No. 16 CV 4000, 2017 WL 622235 (N.D. Ill. Feb. 15, 2017)........................................ 34

*Nicks v. Koch Meat Co., Inc.*,
    No. 16-cv-6446, 2016 WL 6277489 (N.D. Ill. Oct. 27, 2016) ........................................ 2

*No. 13–CV–849–BAS (MDD)*,
    2014 WL 2159268 (S.D. Cal. May 22, 2014).......................................................... 40

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)............................................................................................... 5, 6

*Owens v. Midsouth Barge Services, Inc.*,
    No. G-07-0189, 2008 WL 582515, (S.D. Tex. Feb. 29, 2008)......................................... 23, 24

*Payton v. County of Kane*,
    308 F.3d 673 (7th Cir. 2002) ...................................................................................... 5, 43

*Plumbers & Pipe Fitters, Local 23 v. Kelsey Excavating, Inc.*,
    No. 15-C-50306, 2017 WL 467718 (N.D. Ill. February 3, 2017)........................................... 36

*Pratt v. Rowland*,
    769 F. Supp. 1128 (N.D.Cal.1991) .............................................................................. 24

*Railroad Maint. & Indus. Health & Welfare Fund v. Hacker*,
    No. 10-3305, 2011 WL 5008311 (C.D. Ill. Oct. 20, 2011)....................................... 36

*Rohde v. Cent. R.R. of Ind.*,
    951 F. Supp. 746 (N.D. Ill.1997) ............................................................................. 30

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*,
    786 F.3d 510 (7th Cir. 2015) ......................................................................................... 34

*Salcedo v. D'Arcy Buick GMC, Inc.*,
    No. 15-c-3677, 2016 WL 7635882 (N.D. Ill. May 13, 2016)......................................... 2

*Sanchez v. Global Parking Mgmt., Inc.*,
    No. 14-cv-04611, 2015 WL 4429024 (N.D. Ill. July 20, 2015) ............................................. 36

*Sandoval v. Ali*,
    34 F. Supp. 3d 1031 (N.D. Cal. 2014) ..................................................................... 40

*Sinochem Int'l. Co. Ltd. v. Malaysia Int'l. Shipping Corp.*,
    549 U.S. 422 (2007)................................................................................................. 30

*Smith v. Colonial Penn Ins. Co.*,
    943 F. Supp. 782 (S.D. Tex. 1996) ............................................................................ 32

*Strategic Mgmt. Harmony, LLC v. Enhanced Bus. Reporting Consortium, Inc.*,
   No. 4:05-cv-00180-JDT-WGH, 2007 WL 2316484 (S.D. Ind. Aug. 10, 2007) ...................... 31

*Tamayo v. Blagojevich*,
   526 F.3d 1074 (7th Cir. 2008) ........................................................................................... 34

*Tel. Sci. Corp. v. Asset Recovery Sols., LLC*,
   No. 15-CV-5182, 2016 WL 4179150 (N.D. Ill. Aug. 8, 2016) ................................................ 40

*U.S. v. Muhammad*,
   502 F.3d 646 (7th Cir. 2007) ........................................................................................... 22

*United States v. Rosenwasser*,
   323 U.S. 360 (1945) ......................................................................................................... 37

*Van Dusen v. Barrack*,
   376 U.S. 612, (1964) ......................................................................................................... 29

*VDF Futureceuticals, Inc. v. Lewis*,
   No. 1:13-cv-00407, 2013 WL 4506937 (N.D. Ill. Aug. 22, 2013) .................................... 35, 36

*Virnich v. Vorwald*,
   664 F.3d 206 (7th Cir. 2011) ........................................................................................... 34

*Wachovia Sec., LLC, v. Banco Panamericano, Inc.*,
   674 F.3d 743 (7th Cir. 2012) ........................................................................................... 35

*Weiland v. AssureCare, Inc.*,
   No. 12-C-01947, 2013 WL 4840460 (N.D. Ill. Sept. 10, 2013) ............................................ 36

*White v. Classic Dining Acquisition Corp.*,
   No. 1:11-cv-712, 2012 WL 1252589 (S.D. Ind. Apr. 13, 2012)............................................. 39

**Statutes**

28 U.S.C. § 1391(a)(2) ............................................................................................................. 31

28 U.S.C. § 1391(b) ................................................................................................................. 22

28 U.S.C. § 1391(b)(1) ....................................................................................................... 2, 6, 22

28 U.S.C. § 1391(b)(1) & (c)(2) and (b)(2) ................................................................................. 22

28 U.S.C. § 1391(b)(1), (c)(2) ..................................................................................................... 2

28 U.S.C. § 1391(c)(2)............................................................................................................... 22

28 U.S.C. § 1404(a) ...................................................................................................... 3, 29, 30, 34

29 U.S.C. § 216(b) ..................................................................................................................... 1

Section 1391(b)(2) ................................................................................................................. 2, 25

Section 1391(b)(3) ..................................................................................................................... 28

**Rules & Regulations**

Fed. R. Civ. P. 12(g)(2), (h)(1) .................................................................................................. 1

Fed. R. Civ. P. 30(b)(6)............................................................................................................. 17

Fed. R. Civ. P. 8(a)(2) ................................................................................................... 34

Rule 12(b)(3) ..................................................................................................................... 2

Rule 12(b)(6) ..................................................................................................................... 3

29 C.F.R. § 791.2(a) ...................................................................................................... 38

29 C.F.R. § 791.2(b) ...................................................................................................... 38

## I.    <u>INTRODUCTION</u>

In their renewed Motion to Dismiss, (Dkt. Nos. 109-110), the Koch Defendants have reasserted their request that the case be transferred to the United States District Court for the Southern District of Mississippi, Northern Division, despite the fact that the First Amended Complaint [Dkt. No. 11] ("FAC") now makes clear that: 1) the case concerns Koch Foods' ***nationwide*** policy and practice of failing to pay overtime premiums and minimum wage to the individuals who catch its chickens via a common scheme to engage thinly capitalized third party contractors; and 2) that Koch Foods is, in fact, one vertically integrated poultry processing company headquartered in Illinois, despite having established a fictional corporate structure via separate registered entities relating to each of their eight Complexes.

Notably, the Koch Defendants have not renewed their request that the Court dismiss the action based on lack of personal jurisdiction under Rule 12(b)(2), and have, in fact, conceded that personal jurisdiction is proper over all of the Koch Defendants for this case. *See* Mot. at 6 n.4 ("Although the AL-TN-GA Koch Defendants and Koch Mississippi are not subject to personal jurisdiction in Illinois, they do not challenge jurisdiction in Illinois for this – but only this – case."). Indeed, by failing to include a request for dismissal under Rule 12(b)(2) here, the Koch Defendants have waived their right to make such a challenge, and have consented to personal jurisdiction by this Court over all of the Koch Defendant entities. *See* Fed. R. Civ. P. 12(g)(2), (h)(1).

Implicit in their motion then, is the concession that this Court has either general or specific personal jurisdiction over the Koch Defendants because 1) Plaintiffs have provided sufficient evidence in the FAC that the Koch Defendants are alter egos of one another via the "veil-piercing factors" or the "extraordinary control factors"; and/or 2) the Koch Defendants have "purposefully availed themselves of the privilege of conducting business in this state," and the "alleged injury

… [arose] from the Koch Defendants' forum-related activities". *See Nicks v. Koch Meat Co., Inc.*, No. 16-cv-6446, 2016 WL 6277489, *3-4, *5 (N.D. Ill. Oct. 27, 2016) ("Mot. To Dismiss Order").

These concessions regarding jurisdiction render the Koch Defendants' Rule 12(b)(3) request to dismiss pursuant to 28 U.S.C. § 1391(b)(1) moot, as all Defendants are subject to this Court's personal jurisdiction with respect to the civil action in question. *See* 28 U.S.C. § 1391(b)(1), (c)(2). The Koch Defendants' attempt to avoid this conclusion by asserting that Jet was included as a party in the FAC (as was required because an FLSA claim cannot be settled absent approval of a Court[1]) fails, because Jet – a party no longer part of the case -- consented to this Court's jurisdiction for purposes of settlement. *See* Settlement Agreement and Release ("Settlement Agreement") (Dkt. No. 101-1; Dkt. No. 105 (Order)). It would be odd and impractical for the Court to maintain jurisdiction over the settlement with Jet, but to dismiss the case against the Koch Defendants based on the fact that the Koch Defendants assert that the Court lacks personal jurisdiction over Jet. Moreover, Plaintiffs have sufficiently alleged that the Court has specific jurisdiction over Jet by virtue of its transactions with the Koch Defendants, including the interactions which gave rise to the Plaintiffs' FLSA claims. *See* FAC ¶¶ 6, 8, 9.

In addition, as set forth in further detail below, the FAC and the limited discovery that the Court permitted in its Motion to Dismiss Order has confirmed that venue is also proper in this Court pursuant to Section 1391(b)(2), because a substantial part of the events giving rise to this claim occurred in this Judicial District. Specifically, Koch Foods' scheme to control its labor force in a uniform manner necessary to implement their vertically integrated poultry processing systems, including budgets, duties, methods of operation, as well as the use of third party contractors to

---

[1] *See Salcedo v. D'Arcy Buick GMC, Inc.*, No. 15-c-3677, 2016 WL 7635882, *1 (N.D. Ill. May 13, 2016) ("[S]ettlement of claims for back wages under the FLSA require approval from the Department of Labor or from a district court.") (citations omitted).

avoid overtime and minimum wage obligations to its chicken catching crews emanated from Park Ridge, Illinois, and the officers and directors of each of the Koch Complex Defendants with ultimate authority work and reside in Illinois. FAC ¶¶ 9, 72, 76, 86.

The Court should also reject the Koch Defendants' request that the Court use its discretion to transfer the case to Mississippi for reasons of convenience pursuant to 28 U.S.C. § 1404(a). It is again odd that the Koch Defendants and their Illinois counsel would argue that it is more convenient for them to litigate this nationwide collective action in Mississippi than in Illinois -- the location of their corporate headquarters, and the work and personal residence of the company's Chief Executive Officer and Chief Operating Officer, who are also (not coincidentally) the sole officers and directors and ultimate managers of each of the separately registered limited liability Koch Defendant companies that form the eight Complexes. FAC ¶ 26, 27. Ironically, under the Koch Defendants' theory of jurisdiction, a Mississippi court may not even have jurisdiction over the purportedly separate and distinct non-Mississippi or Illinois Koch Defendants. Regardless, Plaintiffs' choice of forum should be given substantial weight, especially here, where the FAC properly alleges that Koch Foods' nationwide scheme to improperly misclassify the workers on its chicken catching crews and use contractors to avoid wage compliance requirements emanates from its corporate headquarters in Illinois. Contrary to the Koch Defendants' assertions, Illinois most certainly has an interest in ensuring that its corporate residents – here, one of the largest poultry processing companies in the country – are complying with the law and not taking advantage of their workers, either in Illinois or in other states.

Next, the Court should reject the Alabama, Tennessee and Georgia registered entity Koch Defendants' request for dismissal under Rule 12(b)(6), as Plaintiffs have sufficiently alleged the threshold requirements for their FLSA claims against all of the Koch Defendants. The Koch

Defendants entirely ignore the detailed allegations in the FAC that spell out how Koch Foods is in fact, one nationwide company acting as one entity with a centralized reporting structure, centralized decision making, centralized operating systems, and centralized financials. Put simply, the numerous corporate registrations associated with Koch Foods are a sham. Koch acknowledges as much by conceding personal jurisdiction, and it would be an injustice for Koch Foods to be permitted to use those corporate registrations as a shield to avoid liability for paying its workers improperly. "Viewing the totality of the circumstance of the whole activity," Plaintiffs have plausibly alleged that they are acting directly or indirectly in the interest of all of the Koch entities, and that the work they performed and the work of similarly situated chicken catching crew members simultaneously benefits each of the Koch Defendants. *See Brown v. ABM Indus., Inc.*, No. 15-c-6729, 2015 WL 7731946, *4 (N.D. Ill. Dec. 1, 2015) (St. Eve, J.) (internal citations omitted). That is all that is required at this stage.

Finally, the Court should decline to grant Defendants' request to dismiss the Alabama, Tennessee and Georgia registered entity Koch Defendants based on standing grounds. Taking into account Plaintiffs' alter ego/ pierce the corporate veil allegations, Plaintiffs have demonstrated that their injury is fairly traceable to the challenged conduct of all of the Koch Defendants. This case in no different than a typical nationwide FLSA collective action, and a Plaintiff need not have worked at every geographic work location in which the company operates in order to have standing to represent a nationwide collective. Even setting aside that Koch Foods is in fact one company, the FAC specifically alleges that injuries fairly traceable to each of the Koch Complex Defendants, including that managers from each Complex participated in the decision that led to the exclusive use of third party contractors for staffing that formed the basis of Plaintiffs' claims, and that the Complexes do, from time to time, utilize chicken catchers from other Complexes to catch their

4

chickens.  FAC ¶¶ 94-95; FAC ¶ 112. Combined, and viewed as a whole, these allegations more than plausibly allege Article III standing at this stage.

Moreover, Defendants put the cart before the horse, as the standing issue need not be raised prior to deciding whether to conditionally certify a nationwide FLSA class and send notice to similarly situated individuals. The Seventh Circuit has held that the court should decide class certification issues first and treat the class as a whole as the relevant entity for Article III purposes. *See Payton v. County of Kane*, 308 F.3d 673, 680-82 (7th Cir. 2002) *cert. denied sub nom.*, *Carroll County v. Payton*, 540 U.S. 812 (2003) (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ("the class certification issues are ... logically antecedent to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing.)). This is especially true here, where interviews with Opt-In Plaintiffs have revealed that at least five the individuals caught chickens for Koch in Alabama for some period of time in addition to Mississippi under the same payment terms in which they were not compensated for overtime. *See* Exs. B-F. If the Court is not inclined to deny Defendants' request regarding standing, it should postpone the decision until after a ruling on Plaintiffs' forthcoming Notice Motion. For the reasons stated herein, the Koch Defendants' motion to dismiss should be denied.

## II.     <u>PROCEDURAL HISTORY</u>

Plaintiffs originally filed this case as a collective action on June 21, 2016 on behalf of all individuals employed by Koch Meat, Inc. d/b/a Koch Foods ("Koch Meat"), Koch Foods of Mississippi, LLC ("Koch Foods MS") and/or Jet Poultry Services, Inc. ("Jet") as members of live-haul, chicken catching crews in the United States, and who were paid on a piece rate and did not receive overtime compensation (the "FLSA Collective"). *See* Compl. ¶ 14 (Dkt. No. 1.)

Jet filed its Motion to Dismiss on August 3, 2016. (Dkt. Nos. 37-39.) Koch Foods of MS

filed a Motion to Dismiss on August 4, 2016. (Dkt. Nos. 40-42.) Both motions claimed that this Court lacked personal jurisdiction over the two Defendants, and additionally requested that the case be dismissed or transferred to the Southern District of Mississippi based on improper venue. On October 27, 2016, the Court denied Koch Mississippi's motion to dismiss without prejudice and granted Plaintiffs permission to conduct limited jurisdictional discovery on the Koch Defendants, including targeted interrogatories and depositions of Lance Buckert and Koch Mississippi corporate designees. (Dkt. No. 82.)

In its Order, the Court held that, construing the Complaint liberally, Plaintiffs demonstrated (i) an overlap in directors and officers among Koch entities; (ii) a tendency by "Koch Foods, Inc." to issue corporate communications and filings on behalf of its affiliates; and (iii) the existence of a "vertically integrated" enterprise in which "Koch" exerts some control at each stage of the business. Order at *4. The Court held that while information regarding the formal separation of Defendants' assets and Defendants' internal governance structure was ambiguous in the Complaint, because such information was in Defendants' control, Plaintiffs would be permitted limited discovery on these issues. *Id.* The Court also granted additional discovery on the operational control exerted by Koch Meat over chicken catching, as well as Plaintiff's alter ego theory of jurisdiction. *Id.* The Court also reserved opinion on the Koch Defendants' venue challenge under 28 U.S.C. § 1391(b)(1), and granted limited venue discovery relating to Section (b)(2). *Id.* at *7.

In compliance with the Court's order, Plaintiffs served the ordered discovery on the Koch Defendants. Plaintiffs also took Rule 30(b)(6) depositions of 1) Lance Buckert, Vice President of Finance for Koch Foods; 2) Ronnie Joe Keyes, Live Production Manager for Koch Farms MS; and 3) Deborah Beemon, Financial Controller for Koch Foods MS. This discovery greatly clarified

Koch's internal structure and governance, as well as the confusion that had arisen over the various Koch registered entities.

On December 19, 2016, Plaintiffs and Jet entered into a formal settlement agreement of the claims of 64 Settlement Collective Members. *See* Settlement Agreement and Release ("Settlement Agreement") (Dkt. No. 101-1.). In the settlement, Jet agreed that this Court "would retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms" of the Settlement Agreement and that it would "submit to the jurisdiction of the Court for purposes of interpreting, implementing, and enforcing the settlement embodied in [the] Agreement and all orders and judgments entered in connection therewith." *Id.* at ¶ 26. On January 11, 2017, the Court approved the Settlement and dismissed the claims against Jet with prejudice. (Dkt. No. 105.)

Based on the information produced in the limited discovery, Plaintiffs filed a Motion for Leave to File First Amended Collective Action Complaint which sought to 1) add the relevant Koch registered entities as named Defendants[2]; 2) add a minimum wage violation claim on behalf of Plaintiffs and similarly situated individuals; 3) clarify the proposed collective definition; and 4)

---

[2] The Defendants in the FAC include: 1) Koch Foods, Inc. ("Koch Corporate"); 2) Koch Meat Co. d/b/a Koch Poultry Co. ("Koch Meat"); 3a) Koch Foods of Mississippi, LLC ("Koch Foods MS"); 3b) Koch Farms of Mississippi, LLC ("Koch Farms of MS" and collectively with Koch Foods MS, the "Mississippi Complex"); 4a) Koch Foods of Alabama, LLC ("Koch Foods AL"); 4b) Koch Farms of Alabama, LLC ("Koch Farms of AL" and collectively with Koch Foods AL, the "Montgomery Complex"); 5a) Koch Foods of Ashland, LLC ("Koch Foods Ashland"); 5b) Koch Farms of Ashland, LLC ("Koch Farms of Ashland" and collectively with Koch Foods Ashland, the "Ashland Complex"); 6a) Koch Foods, LLC d/b/a Koch Foods of Chattanooga, LLC and d/b/a Koch Foods of Morristown, LLC ("Koch Foods TN"); 6b) Koch Farms, LLC ("Koch Farms of TN" and collectively with Koch Foods TN, the "Chattanooga and Morristown Complexes"); 7a) Koch Foods of Gadsden, LLC ("Koch Foods Gadsden"); 7b) Koch Farms of Gadsden, LLC ("Koch Farms of Gadsden" and collectively with Koch Foods Gadsden, the "Gadsden Complex"); 8a) JCG Foods of Alabama, LLC d/b/a Koch Foods of Collinsville ("JCG Foods AL"); 8b) JCG Farms of Alabama, LLC ("JCG Farms AL," and collectively with JCG Foods AL, the "Collinsville Complex"); 9a) JCG Foods of Georgia, LLC d/b/a Koch Foods of Pine Mountain Valley ("JCG Foods GA"); 9b) JCG Farms of Georgia, LLC ("JCG Farms GA", and collectively with JCG Foods GA, the "Pine Mountain Valley Complex"); and 10) Jet Poultry Services, Inc. ("Jet").

add additional detail regarding Koch's organizational structure, and the underlying allegations supporting Plaintiffs' claims. (Dkt. Nos. 94-95.) The Court granted Plaintiffs' Motion and the Plaintiffs filed their First Amended Collective Action Complaint ("FAC") on December 22, 2016. (Dkt. Nos. 98-99.) Koch Meat and Koch MS' Illinois counsel accepted service on behalf of all of the Koch Defendant entities.

The FAC defines the proposed collective as:

> All individuals who worked as members of live-haul, chicken catching crews catching Koch Foods's chickens on the farms used by any one of the eight Koch Complexes (Mississippi, Montgomery, Ashland, Chattanooga, Morristown, Gadsden, Collinsville, and/or Pine Mountain Valley) to raise chickens, and who were paid a piece rate and did not receive overtime compensation or were not paid a minimum wage between June 21, 2013 and the present (the "FLSA Collective").

FAC ¶ 60.

As of the date of this filing, 80 individuals in addition to the Plaintiffs have filed Opt-In Consent Forms to join this action. (Dkt. Nos. 4-7, 15, 20, 23, 33, 43, 47-48, 53, 59, 77, 88, 92, 97, 100, 108, 112, 115.) While the Opt-In Plaintiffs that have joined the case all worked on chicken catching crews for Koch in Mississippi, at least five have also performed work for Koch in Alabama. *See* Exs. B-F.

The Koch Defendants filed their Motion to Dismiss Plaintiffs' First Amended Collective Action Complaint or, In The Alternative, To Transfer. (Dkt No. 109-110.) In their motion, the Koch Defendants do not challenge that this Court has personal jurisdiction over them.

## III. FACTUAL BACKGROUND

### A. The Koch Defendants Act As One Entity

Throughout the FAC, Plaintiffs have set forth allegations that the Koch Defendants' corporate registrations are a sham. The Koch Defendants are all corporate registrations doing business as Koch Foods, one of the largest vertically integrated poultry processors in the United

States. *See* FAC ¶¶ 12, 62. As a vertically integrated poultry processing company, Koch Foods controls all aspects of the live production, slaughtering and processing of its chickens, as opposed to independently operating one aspect of those functions. *See id.* ¶ 13. Although Koch Foods has organized itself into a number of separately registered companies, there is, in fact, such a unity of interest and ownership amongst them that the separate personalities of the companies do not exist independently. *See id.* ¶ 14

In practice, Koch Foods is organized into eight separate divisions that handle live growing and processing of chickens for Koch in Mississippi, Alabama, Georgia and Tennessee. *See* FAC ¶ 15; Deposition of Lance Buckert dated November 15, 2016 ("Buckert Dep.") (attached as Exhibit G) at 23:23-24:12. Each division is referred to as a "Complex." *See* FAC ¶ 15; Ex. A, Koch Complex Organization Chart. The eight Complexes are organized into a Western Region (Mississippi, Montgomery, Ashland, and Pine Mountain Valley) and an Eastern Region (Chattanooga, Morristown, Gadsden, and Collinsville). *See id.* Each Complex reports to the Vice President of its assigned region and each of the Vice Presidents report directly to the President and Chief Operating Officer of Koch Foods, both of whom are located at the Corporate headquarters in Illinois. *See id*; Buckert Dep. 162:23-163:19.

Koch Foods holds itself out the public as one unified entity. Nowhere on its website (www.kochfoods.com) does it identify any parent/subsidiary relationships between separate companies. *See* FAC ¶ 17. For example, Koch Foods' website boasts that it is "proud to be one of the largest poultry processors in the United States." Koch Foods' website represents that it employs approximately 13,000 employees, which includes approximately 40 employees at the Park Ridge, Illinois office and the remaining who work throughout the country, including at the Koch Complex Defendants. *See* FAC ¶ 17; Buckert Dep. at 34:12-34:14; 55:19-56:9.

Koch Foods has created a fictional corporate structure of a parent corporation with separately registered subsidiary limited liability companies for each Complex. Each Complex has a registered "Foods" entity and a registered "Farms" entity, to separate out costs associated with operational aspects of growing out the chickens ("Farms"), and costs associated with processing of the chickens ("Foods"). *See* FAC ¶ 18; Buckert Dep. at 24:19-25:6 (discussing the relationship between the Koch Foods and Koch Farms) The Foods and Farms entity for each Complex share common management and reporting structure. *See id.* The Foods entity pays for all employees that perform work relating to its particular Complex, whether or not they are engaged in the grow-out or the production process of chickens. *See id.*

Neither of the incorporated entities (Corporate and Koch Meat) keeps corporate minutes or maintains a corporate record book. *See* FAC ¶ 20; Buckert Dep. at 82:6-9. All of the Koch Defendants share the same Koch logo. *See* FAC ¶ 21; Buckert Dep. at 155:5-16. Employees of all of the Koch Defendants share the same email domain, kochfoods.com, in their email addresses. *See* FAC ¶ 22; Buckert Dep. at 31:2-4.

The Koch Defendants bear the wage burden of employees based on the entity with the closest geographic location or for convenience, whether or not that employee performs any business function for that particular entity. *See* FAC ¶ 24; Buckert Dep. at 134:24-135:13; 110:4-110:7 (Q. And the other individuals who are employed by Koch Foods, Incorporated, are paid for by various of the other subsidiaries? A. That's correct.) For example, all of the employees who perform any work for the "parent" Koch Foods, Inc. who work in the Park Ridge, Illinois office are paid by Koch Meat. *See* FAC ¶ 24; Buckert Dep. at 106:108:16. The Vice President of the Eastern Region (a Koch Foods, Inc. employee) works out of Mississippi and is therefore paid for by Koch Foods of MS, even though the Mississippi Complex reports to the Western Region VP

10

and the Eastern Region VP has no direct job responsibilities that relate to the Mississippi Complex. *See* FAC ¶ 24; Buckert Dep. at 45-10-45:17.

The Koch Defendants comingle their funds. Koch Corporate "loans" money to a subsidiary whenever its funds appear low. *See* FAC ¶ 25; Buckert Dep. at 71:11-71:21; 85:24-87:11. There are no written agreements regarding the terms of the "loan" between Koch Corporate and any of the subsidiaries. *See* FAC ¶ 25; Buckert Dep. at 88:2-89:13. The subsidiaries are not allowed to bargain the terms of the loan. The loan transfer and repayment are made through a ledger transfer. *See* FAC ¶ 25; Buckert Dep. at 89:11-89:13.

The Koch Defendants all share common officers and directors. Joseph C. Grendys and Mark Kaminsky, the CEO and COO of Koch Foods, are listed as the officers and directors of each of the separately registered limited liability Koch Defendant companies that form the eight Complexes.[3] *See* Ex. A, Koch Corporate Org. Chart. Both individuals work out of the company's Park Ridge, Illinois headquarters. *See* FAC ¶ 26; Buckert Dep. at 18:4-11 (Mark Kaminsky's office location), 33:10-11 (Joseph Grendys' office location).

Koch Corporate is the ultimate parent of all of the subsidiaries, whose sole function is to manage the subsidiaries and their results all from the Park Ridge, Illinois office. *See* FAC ¶ 27; Buckert Dep. at 117:23-118:9; *see also id.* at 107:14-107:21 (Q. How does Koch Foods, Incorporated, make money? A. Koch Foods, Incorporated, is the sum of all of its subsidiaries so it makes money due to consolidation of all of its subsidiaries. Q. Does Koch Foods, Incorporated,

---

[3] Curiously, in its reply to the original Motion to Dismiss, the Koch Defendants appeared to deny that Mr. Kaminsky was an officer of Koch Mississippi. *See* Dkt. No. 62 at 9 ("Plaintiffs contend that Kaminsky is a common officer because he is the COO/Secretary of Koch Foods, Inc. and Koch Meat, and his email address is listed on a state filing document for Koch Mississippi. … But this proves nothing. An email address of a person on a document that fails to identify the person as an officer or director does not make that person an officer or director of the company."). As has now been made clear through sworn testimony, Plaintiffs' original allegations were accurate.

11

make any money independent of its subsidiaries? A. They do not.) Joseph C. Grendys is the Sole Director and President of Koch Corporate. *See* FAC ¶ 27; Buckert Dep. at 72:22-24; Koch Corporate Org. Chart. Mark Kaminsky is the President and Chief Operating Officer of Koch Corporate. *See* FAC ¶ 27; Buckert Dep. at 32:6-8; Koch Corporate Org. Chart. Lance Buckert is the Chief Financial Officer of Koch Corporate. *See* FAC ¶ 27; Buckert Dep. at 31:14; Koch Corporate Org. Chart.

Koch Meat was the original entity that was started by Joseph Grendys, prior to the current corporate structure. *See* FAC ¶ 28; Buckert Dep. at 78:22-79:6. Koch Meat is a subsidiary of Corporate, but it directly pays each of the Officers and Directors of Koch Corporate, and pays each of the approximately 40 employees who work out of Koch's corporate headquarters in Park Ridge, Illinois, and who are labeled employees of Koch Corporate, including employees who work in Koch's marketing, IT support, customer service, accounting, supply chain, sales and payroll departments. *See* FAC ¶ 28; Buckert Dep. at 33:12-22. Koch Meat also directly pays the Managers of each of the eight Koch Complexes, specifically Messrs. Grendys, Kaminsky and Buckert. *See id.* Joseph C. Grendys is also the President of Koch Meat, and Mark Kaminsky is the Secretary and Treasurer of Koch Meat. *See* FAC ¶ 28; Buckert Dep. at 81:10-82:1; Koch Corporate Org. Chart.

Each of the Koch Complex Defendants has a clearing account at the same bank in Illinois, where the only authorized signers to each of their accounts are Joseph Grendys and Mark Kaminsky, who are based in Illinois. *See* FAC ¶ 53; Buckert Dep. at 162:23-163:19; Koch Foods MS Resp. to Third Set of Interrogs. No. 3. These accounts are used to pay the third party contractors who provide staffing of live-haul chicken catching crews, including Plaintiffs. *See* FAC ¶ 53; Deposition of Deborah Beemon dated November 21, 2016 ("Beemon Dep.") (attached

as Exhibit I) at 24:11-25:8.

**B.    The Koch Defendants' Operations**

Koch Foods hatches chickens in Koch-owned hatcheries, and then ship them to designated poultry growers, that are under Koch Foods' control and that only house and raise Koch-owned chickens. *See* FAC ¶ 65; Buckert Dep. at 41:8:22. The Koch Defendants' boilerplate declarations show the Koch Complexes all operate the same manner. *See* Declaration of Harold Hunt ¶¶ 5-6 (Dkt. No. 110-1, Ex. 1); Chuck Moore Decl. ¶¶ 5-6 (Dkt. No. 110-1, Ex. 2); Scott Barnes Decl. ¶¶ 5-6 (Dkt. No. 110-1, Ex. 3); Chris Raley Decl. ¶¶ 5-6 (Dkt. No. 110-1, Ex. 4); David Wilds Decl. ¶¶ 5-6 (Dkt. No. 110-1, Ex. 5); Jim Marsh Decl. ¶¶ 5-6 (Dkt. No. 110-1, Ex. 6); Patrick Johnston Decl. ¶¶ 5-6 (Dkt. No. 110-1, Ex. 7); Declaration of Ronnie Joe ("Keyes Decl.") ¶ 5 (Dkt. No. 110-1, Ex. 8).

Koch Foods employs one veterinarian and one nutritionist to oversee chicken raising by all of the Complexes and to set uniform guidelines for the feed profiles of Koch chickens. *See* FAC ¶ 67; Deposition of Ronnie Joe Keyes dated November 21, 2016 ("Keyes Dep.") (attached as Exhibit H) at 50:12-51:8 (discussing the Koch Defendants' requirements to follow the veterinarian's instructions); 54:16-55:6 (discussing the Koch Defendants' requirements to follow the nutritionist's instructions). The veterinarian and nutritionist are Koch Corporate employees, yet are paid by the respective Foods Defendant at the Complex at which each is physically located. *See* FAC ¶ 67; Buckert Dep. at 44:23-45:9 (The current veterinarian, Dr. Pettit Ewing, works out of the Koch Foods MS complex and is paid by Koch Foods MS. The current nutritionist, Randy Gordon, works out of the Koch Foods Chattanooga complex and is paid by Koch Foods Chattanooga.)

According to their website, all poultry from Koch Foods is hatched, raised and harvested

in the United States. *See* Koch Foods Poultry FAQs, Koch Foods, http://www.kochfoods.com/our-company/faq (last visited Feb. 23, 2017); *see also* FAC ¶ 68. Koch Foods boasts on its website that "all of its live bird operations are 'cage free.' The only time birds are in cages is during transport from one facility to another, which is a measure we take to ensure the safety of our birds." Koch Foods Poultry FAQs; *see also* FAC ¶ 69. Once the chickens reach marketable age and size, Koch Foods retrieves the chickens and transports them to its plants for processing. *See* FAC ¶ 69; Buckert Dep. at 41:18-22.

The Koch Complex Defendants and Koch Meat often buy and sell chicken with each other. *See* FAC ¶ 70. For example, Koch Meat and Koch Foods MS buy and sell chicken breasts from each other and ship those chicken breasts in and out of Illinois from Koch Meat's facilities in Illinois to Koch Foods MS's facilities in Mississippi and vice versa. *See See* FAC ¶ 70; Buckert Dep. at 99:15-100:2; 106:7-107:2; 107:11-107:13 (describing Koch Meat's ongoing transactions with Koch Foods MS). Joseph Grendys determines the price for the sale of chickens. *See* FAC ¶ 70; Buckert Dep. at 100:3-100:12. In such transactions, both entities are represented by the same person, typically Lance Buckert, Koch Corporate CFO who works from the Park Ridge, Illinois office. *See* FAC ¶ 70; Buckert Dep. at 106:15-106:23. Payments for these transactions are only reflected through changes in the entities' ledger balances; there is no actual transfer of money from one bank account to another. *See* FAC ¶ 70; Buckert Dep. at 102:4-102:15; 103:6-104:24. Chickens are transported from Mississippi to Illinois, and/or from Illinois to Mississippi, as part of these transactions. *See* FAC ¶ 70; Buckert Dep. at 107:5-107:10.

Koch Meat also buys chicken breast from the Complexes in Gadsden, Collinsville, Montgomery and Ashland. *See* FAC ¶ 71; Buckert Dep. at 23:5-23:16. Chickens are transported from Alabama to Illinois, and/or from Illinois to Alabama, as part of these transactions. *Id.*

The Region VPs are responsible for reviewing the Complexes' operating statistics, consulting with the Complex Managers, and looking for opportunities to improve the Complexes, including labor costs. *See* FAC ¶ 74; Buckert Dep. at 52:12-53:2. They also have the authority to hire, fire, or discipline Complex Managers. *See* FAC ¶ 74; Buckert Dep. at 51:24-52:7. The Region VPs are Koch Foods employees that perform supervisory job duties for multiple Koch subsidiaries that notably do not include the Koch subsidiary that actually pays them or where they are actually physically located and working. Specifically, the Eastern Region VP Gary Davis is a Koch Corporate employee, is located and works in an office in the Mississippi complex, is paid by Koch Foods MS out of the Koch Foods MS budget, but does not have any job responsibilities for Koch Foods MS, instead supervising, from afar, Koch Foods TN, Koch Farms TN, JCG Foods AL, JCG Farms AL, Koch Farms Gadsden and Koch Foods Gadsden. *See* FAC ¶ 74; Buckert Dep. at 44:14-46:4. The Western Region VP Dennis Gordon is a Koch Corporate employee, is located and works in an office in the Koch Foods AL complex, and is paid entirely out of the budget of Koch Foods AL, but supervises, from afar, Koch Foods MS, Koch Farms MS, Koch Foods Ashland, Koch Farms Ashland, JCG Foods GA, and JCG Farms GA. *See* FAC ¶ 74; Buckert Dep. at 46:9-47:4. Each individual subsidiary's profits are affected by whether or not a Koch Foods employee is on their own payroll. *See* FAC ¶ 74; Buckert Dep. at 48:2-49:1. The other subsidiaries do not share in the burden of paying their salaries. *See* FAC ¶ 74; Buckert Dep. at 48:18-49:1.

The employees at the Complexes are required to follow the directives of the Region VPs, who are "employees" of Koch Corporate. *See* FAC ¶ 75; Keyes Dep. at Keyes Dep. at 68:13-70:22 (regarding the Region VPs input on the company-wide weekly conference calls). For example, Koch Foods holds company-wide weekly conference calls, on which Mr. Kaminsky is present, where each of the Complexes reports to Mr. Kaminsky and the Region VPs on their operating

15

statistics and any issues that may arise. The call consists of approximately 100 employees and is led by Wayne Brantley, Koch Corporate Cost Controller. *See* FAC ¶ 75; Keyes Dep. at 40:17-46:14 (discussing the company-wide weekly Monday morning conference calls). Each Complex or region has an additional separate weekly meeting. *See* FAC ¶ 75; Keyes Dep. at 72:9-72:16.

Each Complex has a Controller who is responsible for closing the books and records for each fiscal period and reporting the financial results to CFO Lance Buckert, at the end of each month. *See* FAC ¶ 76; Buckert Dep. at 21:2-21:6. Each Controller also reports to the Director of Financial Reporting. Mr. Buckert, as CFO, has the authority to hire or fire the Controllers at each subsidiary. *See* FAC ¶ 76; Buckert Dep. at 93:15-93:17.

The Koch Defendants also share other key managerial employees, such as Cost Controller, Director of Purchasing, Ingredients Procurement, and Senior Director Quality Assurance. *See* FAC ¶ 77; Buckert Dep. at 125:2-22 (Cost Controller), 128:6-129:22 (Director of Purchasing), 133:24-134:19 (Ingredients Procurement), 135:10-136:3 (Senior Director Quality Assurance). For example, the Director of Purchasing purchases parts and equipment for all of the Koch Defendants. Buckert Dep. at 128:6-129:22. Ingredients Procurement schedules the purchasing for the inbound cord and soybean meal for all of the complexes. *See* FAC ¶ 77; Buckert Dep. at 133:24-134:19; Ex. A, Koch Corporate Officers Chart 9-5-13. These are employees of Koch Corporate, whose salaries are paid by the Complex in which each physically has an office. *See* FAC ¶ 77.

The Koch Defendants are so intertwined that they operate as one entity, with the complexes being Koch Corporate's only profit source. *See* FAC ¶ 78; Buckert Dep. at 107:14-107:21 (Q. How does Koch Foods, Incorporated, make money? A. Koch Foods, Incorporated, is the sum of all of its subsidiaries so it makes money due to consolidation of all of its subsidiaries. Q. Does Koch Foods, Incorporated, make any money independent of its subsidiaries? A. They do not.). Koch

16

Corporate is actually the sum of all of the subsidiaries that does not independently make any money, but only profits as a result of the consolidation of its subsidiaries. *See* FAC ¶ 78; Buckert Dep. at 50:13-18, 100:24-101:3.

The Complexes' budgets, including labor costs and contracting costs, must all be approved by Mark Kaminsky in Illinois. *See* FAC ¶ 79; Buckert Dep. at 129:21-131:4. There are costs incorporated in the budgets that are actually costs of Koch Corporate, which the Complexes cannot control, such as the price of corn, soybean meal, benefits, and insurance. *See* FAC ¶ 79; Buckert Dep. at 131:9-132:2.

The Koch Defendants share one Safety Director, who updates the Koch Defendants on accidents and/or OSHA activities and who directs the Koch Defendants on how to run operations, including live operations such as the catching of the chickens, safely. *See* FAC ¶ 77; Keyes Dep. at 48:13-49:24 (discussing the Safety Director's duties). All Koch Defendants are required to follow the Safety Director's instructions. *See id*.

The Koch Defendants' financial accounts and records are also so intertwined that they are fundamentally one financial body located in Illinois. Specifically, each Koch Defendant has a lock box account with Harris Bank in Illinois, set up and controlled by Mr. Buckert, where money is deposited and transferred. *See* FAC ¶ 81; Buckert Dep. at 158:6-158:10 (Q. And each one of the Koch Foods subsidiaries has a lock box in Chicago, Illinois? A. Correct. Q. Who set up those lock boxes? A. I did.); Fed. R. Civ. P. 30(b)(6) Deposition of Deborah Beeman dated November 21, 2016 ("Beeman Dep.") at 24:11-24:18 (Q. And what bank account does Koch Farms of Mississippi use? A. We have an account with Harris Bank in Chicago. Each of the complexes have their own bank accounts. Q. And those are all based at Harris Bank; is that correct? A. That's correct.).

Koch Corporate has a multi-million dollar line of credit, which, in order to qualify for, it

had to provide information about each of the Koch Complexes to the bank. *See* FAC ¶ 82; Buckert Dep. at 69:13-71:7. Each Koch Complex Defendant is allowed to and does borrow from Koch Corporate and occasionally from each other when there is a shortfall of money, such as when the cash flow, profit, or revenue has not kept up with their Complex's expenses. There is no formal written agreement regarding the terms of the "loans" between Koch Corporate and the Complexes. The Complexes cannot negotiate the repayment terms which are unilaterally decided by Mr. Buckert, a Koch Corporate employee.

Koch Foods' Consolidation Manager, also a Koch Corporate employee located in the Park Ridge, Illinois headquarters, handles the daily transfers of funds between the entities by logging onto the company-wide accounting platform provided by Harris Bank. *See* FAC ¶ 84; Buckert Dep. at 87:12-91:16. The platform contains all of the Koch Foods' and Complexes' checking and operating accounts. The Consolidation Manager determines whether a Complex is short that day and would need a loan from Koch Corporate. *See id.* Mr. Buckert approves the transaction. *See id.* Repayment then occurs on a daily basis by the Consolidation Manager logging onto the platform and reviewing the amount of available funds from the complex and transferring back to Koch Corporate. *See id.* A daily "Cash Sheet" that informs each subsidiary what money is being transferred in and out of their accounts by Koch Corporate is then generated from the Park Ridge, Illinois headquarters and sent out every day to all the subsidiaries to show their net change for the day. *See id.*

By way of example, payment for the sale of chicken meat between the Koch Defendants is handled via intercompany ledger transfer without any accompanying transfer of money from one bank account to another. *See* FAC ¶ 84; Buckert Dep. at 104:21-105:24.

### C.    Plaintiffs' Claims

Koch Foods, through each one of the Koch Defendant Complexes, engages chicken catching crew members such as Plaintiffs to catch Koch Defendants' chickens so that they can be transported to slaughter. *See* FAC ¶ 87; Keyes Dep. 85:17-20; Keyes Decl. ¶ 5.

All of the crew members who catch Koch Defendants' chickens perform their work in a substantially similar manner, regardless of the Complex under which they catch Koch Defendants' chickens. *See* FAC ¶ 90. According to Koch Farms' MS' Live Production Manager, "there is only one way to catch a chicken." Keyes Dep. at 156:11; *see also* 165:1-7. Prior to approximately 2012, Koch Foods used a combination of direct employee chicken catching crew members as well as chicken catching crews provided by third party staffing companies. *See* FAC ¶ 92; Ex, L, Koch Farms MS Resp. to First Set of Interrogs. No. 1. The services provided by the chicken catching crews who were directly employed by Koch Foods, or any of the Koch Defendant Complexes were the same as the services provided by the chicken catching crews who were brought in by the third party staffing companies. *See* FAC ¶ 93; Keyes Dep. at 165:1-7. After the topic was addressed on the company wide Monday conference calls, in or around 2012 or 2013, Koch Foods made the decision to exclusively use third party contractors to provide live-haul chicken catching crews to catch Koch's chickens. *See* FAC ¶ 94; Keyes Dep. at 85:4-12. Koch Corporate, including the Region VPs and Mark Kaminsky, was aware of, participated in, and approved of the decision to use third party contractors for live-haul chicken catching services. *See* FAC ¶ 95; Keyes Dep. at 129:20-131:3.

The third party contractors all provide substantially similar services to the Koch Defendants regardless of the specific Koch Complex they contract with – namely, the provision of a labor force for live-haul chicken catching crews. *See* FAC ¶ 97. Koch Foods, through the Koch

Mississippi Complex, which is supervised by Koch Corporate, whose employees are paid for by Koch Meat, the third party staffing companies per one thousand chickens caught. *See* FAC ¶ 100; Ex, L, Koch Farms MS Resp. to First Set of Interrogs. No. 3; Ex. J Koch Foods MS Resp. to Amended First Set of Interrogs. No. 5.

### D. The Koch Defendants Are All Joint Employers of Plaintiffs And The FLSA Collective

Koch Foods, and through its comprised fictional subsidiaries, the Koch Defendants, maintains operational control over the day-to-day functions of Plaintiffs and chicken catching crew members. *See* FAC ¶ 105. Plaintiffs and chicken catching crew members travel to Koch Foods' farms to capture Koch Foods' chickens and place them in Koch Foods' cages, for transport to the Koch Foods' poultry processing plants at each of the Koch Complexes. *See* FAC ¶ 107; Ex. B, Declaration of Rick Mitchell ("Mitchell Decl.") ¶ 5; Ex. C, Declaration of Antonio Burkes ("Burkes Decl.") ¶ 5; Ex. D, Declaration of Isaac Ragsdale ("Ragsdale Decl.") ¶ 5; Ex. E, Declaration of Michael Shaw ("Shaw Decl.") ¶ 5; Ex. F, Declaration of Christopher Holifield ("Holifield Decl.") ¶ 5. The only service that the chicken catching contractors provide to the Koch Defendants is human labor, in the form of the Plaintiffs and the chicken catching crew members. *See* FAC ¶ 109.

On occasion, one Koch Complex will engage live-haul chicken-catching crews to catch chickens for another Koch Complex. For example, the Koch Mississippi Complex has housed birds for the Koch Ashland Complex in Alabama. [4] *See* FAC ¶ 112; Keyes Dep. at 139:13-140:9. In that instance, Koch Farms MS contracted with third party contractors to provide live-haul

---

[4] This testimony appears to contradict the Declaration of Chuck Moore, the Live Operations Manager of the Ashland Complex, who affirmed under penalty of perjury that "[a]ll catching services related to chickens provided to the [Ashland] slaughter plant for processing take place in … counties [in Alabama and Georgia]." (Dkt. No. 110-1 at ¶ 6.)

chicken-catching crews to catch Koch Ashland Complex birds that were housed by the Koch Mississippi Complex. *See* FAC ¶ 109; Keyes Dep. at 139:13-140:9. Koch Foods MS paid Gill Enterprises for those services using the same piece rate scheme of per thousand chickens. *See* FAC ¶ 109; Keyes Dep. at 148:19-25.

The Koch Defendants determine the work schedules and implementation of the conditions of the Plaintiffs and chicken catching crew members' employment. *See* FAC ¶ 116; Keyes Dep. at 108:4-15, 144:1-20. The Koch Defendants supervise the work of the live-haul chicken catching crews and dictate their schedules, daily activities and working conditions. Specifically, the Live Operations Manager of each Koch Complex, sometimes with the assistance of a Live Production Administrative Assistant, determines the daily catch schedules by farm, the catch times, and the number of chickens to be caught. *See* FAC ¶ 117; Keyes Dep. at 106:22-107:10. Koch Foods dictates when and how many chickens to put in each cage on each load, every day, based on specific timing and temperature factors that Koch Foods monitors that are dictated by availability at the Koch Complex Defendants' processing plants and by Koch Corporate's practices and efforts that Koch Corporate directs to reduce waste and loss in the process due to dead chickens. *See* FAC ¶ 119; Keyes Dep. at 108:4-15.

The Koch Defendant Complexes also use an internal auditor and an independent auditor who visit the work sites and the chicken catching crews one to two times a week and reports their findings and observations to their superiors at each respective Koch entity. The internal auditor oversees all the work of the live-haul chicken-catching crews. *See* FAC ¶ 122; Keyes Dep. at 157:15-159:17. If an audit proves there is an issue with the way the chickens are caught or caged, Koch's Corporate and/or the Koch Complex Defendant's Quality Control notifies the third party catching company that the chicken catching crews must adhere to Koch's directives. *See* FAC ¶

123; Keyes Dep. at 162:5-13.

## IV.   ARGUMENT

### A.   Venue is Proper In This District

Contrary to the Koch Defendants' arguments, venue is proper in this Judicial District pursuant to both 28 U.S.C. § 1391(b)(1) & (c)(2) and (b)(2). For a business entity, venue is proper "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question" or where "a substantial part of the events or omissions giving rise to the claim occurred" in the Plaintiffs' chosen venue. 28 U.S.C. § 1391(b). *See also* 28 U.S.C. § 1391(c)(2) ("an entity with the capacity to sue and be sued in its common name...shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question"). Venue may be proper in more than one district court. *U.S. v. Muhammad*, 502 F.3d 646, 653-54 (7th Cir. 2007). A defendant may waive venue or personal jurisdiction. *Faur v. Sirius Intern. Ins. Corp.*, 391 F. Supp. 2d 650, 655 (N.D. Ill. 2005).

### 1.   Venue is proper under Section 1391(b)(1)

Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(1) because each of the Koch Defendants resides in Illinois and in this Judicial District because they are each functionally headquartered in the Koch Foods Corporate headquarters in Park Ridge, Illinois, and because each of the Koch Defendants are subject to the Court's personal jurisdiction in this action. FAC ¶ 7. As alleged in the FAC, this Court has both general and specific personal jurisdiction over each of the Koch Defendants because they: (a) transact business in the State of Illinois; (b) own, use and possess property in this State; (c) make and perform contracts with entities in this State; (d) acquired ownership, possession, and control of assets in this State; (e) have a principle place of business in this State; (f) are organized under the laws of this State; and (g), the Koch Defendants

22

act as one entity with substantial connections to this State. *Id.* ¶ 5. Moreover, each of the Koch Defendants are simply registered entities, which in practice, operate as a whole, where the Koch Corporate office of Park Ridge, Illinois exercises daily operational control over each of the other Koch Defendants. *Id.* The Koch Defendants function as a conduit to operate the single business of Koch Foods, which is headquartered in Illinois. *Id. See also* FAC ¶¶ 15-53, 64, 70-72, 76-78, 81, 84, 86. The officers and directors of each of the Koch Complex Defendants reside and work in Illinois, and manage the Koch Complex Defendants from Illinois, such that each of the Complex Defendants are functionally headquartered in Illinois. FAC ¶¶ 7, 26,

The Koch Defendants concede that this Court has personal jurisdiction over them, but argue that venue is still improper pursuant to Section (b)(1) because Jet is not subject to personal jurisdiction in Illinois. Mot. at 6. As a primary matter, the Koch Defendants do not cite any binding case law for the proposition that Jet must still be considered for purposes of Section (b)(1) venue even after it has settled its claims. In addition, the Koch Defendants fail to acknowledge that its proposition is not a settled matter of law. *See Owens v. Midsouth Barge Services, Inc.*, No. G-07-0189, 2008 WL 582515, (S.D. Tex. Feb. 29, 2008) (comparing *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1200 (8th Cir. 1990) (holding that it is "proper to assess the propriety of venue on the basis of circumstances as they now exist, as opposed to the state of affairs that obtained when the complaint was first filed against two defendants"), and *Brown v. Bandai Am., Inc.*, No. 01-0442R, 2001 WL 720464, at *1 (N.D. Tex. Jun. 25, 2001) (stating that "a plaintiff is ... entitled to take steps, such as dismissing a defendant, in order to preserve his original choice of venue"), with *Horihan v. Hartford Ins. Co. of the Midwest*, 979 F. Supp. 1073, 1076 (E.D. Tex. 1997) (holding that "[t]he district in which proper venue lies is determined at the time the complaint is filed and

23

is not affected by a subsequent change of parties.")).[5] As the *Owens* case acknowledges, there is also a question as to whether the Koch Defendants have standing to bring a challenge to venue based on Jet's residence. *Id.* (citing *Pratt v. Rowland*, 769 F. Supp. 1128, 1132 (N.D.Cal.1991) (citing *Camp v. Gress*, 250 U.S. 308, 316, 39 S.Ct. 478, 63 L.Ed. 997 (1919)) ("Improper venue is a defense personal to the party to whom it applies.")).

The Court need not weigh in on whether Jet should be considered as part of a Section (b)(1) analysis or whether Koch has standing to raise the issue, however, because venue is independently proper with respect to Jet for an additional dispositive reason: Jet has explicitly consented to this Court's jurisdiction for purposes of settlement, which is its right to do.[6] *See* Settlement Agreement (Dkt. No. 101-1; Dkt. No. 105 (Order). A defendant may stipulate to venue or personal jurisdiction, as Jet did here in the Settlement Agreement. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court.") (citation omitted). It would be an illogical result to retain jurisdiction over the administration of the FLSA settlement with Jet in this Court while dismissing the claims or transferring the rest of the matter to another district court based on Koch's argument

---

[5] *See also Adhikari v. KBR, Inc.*, No. 15-cv-1248, 2016 WL 4162012, *1 n.3, 2016 WL 4162012 (E.D. Va. Aug. 4, 2016) (declining to consider defendants named in the complaint who were dismissed for failure to timely serve process for venue purposes); *Beloff v. Seaside Palm Beach*, No. 13-100, 2013 WL 3488978, at *2 (E.D. Pa. July 11, 2013) (finding venue proper after voluntary dismissal of several defendants, which had the "effect of mooting [the moving defendant's] improper venue argument").

[6] The FAC also alleges that the Court also has personal jurisdiction over Jet because it (a) transacts business in the State of Illinois with the Koch Defendants, including that it is paid from the Koch Defendants' bank account in Illinois; (b) makes and perform contracts with the Mississippi Complex Koch Defendants, who are functionally headquartered in Illinois; and (c) Jet's transactions and interactions with Koch Foods through the Mississippi Complex gave rise to Plaintiffs and the FLSA Collective Members' FLSA claims. FAC ¶¶ 6, 8, 58.

24

that the Court lacks jurisdiction over Jet. None of the cases the Koch Defendants cite deal with a settled defendant who has explicitly consented to the Court's jurisdiction. *See, e.g., Horihan*, 979 F. Supp. at 1076. Because all Defendants, including Jet, are subject to and have consented to the Court's personal jurisdiction, venue is proper under Section (b)(1).

### 2. Venue is Proper Under Section 1391(b)(2)

In addition, the jurisdictional and venue discovery that the Court permitted Plaintiffs to obtain has confirmed that venue is also proper in this Court under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in Illinois. As the Court has recognized, the test "is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in [Illinois]." Mot. to Dismiss Order at *6 (citation omitted). Here, they plainly do.

Specifically, the FAC alleges that Koch Foods' scheme to control its labor force in a uniform manner necessary to implement its vertically integrated poultry processing systems, including budgets, duties, methods of operation, as well as the use of use third party contractors to avoid overtime and minimum wage obligations to its chicken catching crews emanated from Park Ridge, Illinois, and the officers and directors of each of the Koch Complex Defendants with ultimate authority work and reside in Illinois. FAC ¶ 9. The Koch Defendants' claim that the FAC "is devoid of factual allegations showing that a substantial part of the events or omissions giving rise to the claim occurred in Illinois" is curious, as the FAC is replete with such examples. *See* Mot. to Dismiss at 8.

The FAC alleges a reporting structure that leads directly from each of the eight Complexes to the Vice President for each region, to the President and COO of Koch Foods, Inc., located at the Corporate headquarters in Illinois. FAC ¶¶ 15, 72-74; *see also* Ex. A (Organizational Chart). The

FAC alleges that Mr. Grendys, based in Illinois, is the Manager for all of the Koch Complexes, and is the ultimate decision maker for all of the Koch Defendants. FAC ¶ 72; 86. The employees at the Complexes are required to follow the directives of the Region VPs, who are "employees" of Koch Corporate. *Id.* ¶ 75. For example, Koch Foods holds company-wide weekly conference calls, on which Mr. Kaminsky (based in Illinois) is present, where each of the Complexes reports to Mr. Kaminsky and the Region VPs on their operating statistics and any issues that may arise. *Id.* The call consists of approximately 100 employees and is led by Wayne Brantly, Koch Corporate Cost Controller. *Id.* There are approximately 40 Koch Corporate employees who work at the Park Ridge, Illinois headquarters of Koch Foods and who perform job duties for all Koch subsidiaries. FAC ¶ 86.

The payments made to the third party contractors who provide staffing for chicken catching crews are also controlled by Koch employees in Illinois and are paid from Illinois. *See* FAC ¶ 53 ("Each of the Koch Complex Defendants has a clearing account at the same bank in Illinois, where the only authorized signers to each of their accounts are Joseph Grendys and Mark Kaminsky, who are based in Illinois. These accounts are used to pay the third party contractors who provide staffing of live-haul chicken catching crews, including Plaintiffs."). The Complexes' budgets, which include the labor costs and contracting costs at issue here, must all be approved by Mark Kaminsky in Illinois. *Id.* ¶ 79. The Koch Defendants' financial accounts and records are also so intertwined that they are fundamentally one financial body located in Illinois. Specifically, each Koch Defendant has a lock box account with Harris Bank in Illinois, set up and controlled by Mr. Buckert, where money is deposited and transferred. *Id.* ¶ 81. Funds are transferred daily between the Complexes, all at the direction and control of Koch employees in Illinois. *Id.* ¶ 84.

The FAC also specifically alleges that the decision to exclusively use third party

contractors for live-haul chicken catching services was discussed at a company wide level, and that Koch Corporate, in Illinois, was aware of, participated in, and approved of the decision to use third party contractors for live-haul chicken catching services. *Id.*¶¶ 94-96. The FAC further alleges that the Safety Director of Koch Corporate directs the Koch Defendants on how to run operations, including live operations such as the catching of chickens, safely, and that the Complexes are required to follow these instructions. *Id.*¶ 80.

Koch Foods in Illinois also controls the working conditions of Plaintiffs and similarly situated chicken catchers. For example, Koch Foods dictates when and how many chickens to put in each cage on each load, every day, based on specific timing and temperature factors that Koch Foods monitors that are dictated by availability at the Koch Complex Defendants' processing plants and by Koch Corporate's practices and efforts that Koch Corporate directs to reduce waste and loss in the process due to dead chickens. FAC ¶ 119. All of these decisions are made in accordance with Koch Corporate's specifications, and with the approval and under the direction of the supervisory employees at Koch Corporate, who are paid by Koch Meat, based in Illinois. *Id.* ¶ 120.

Further, in FLSA cases where questions are raised regarding a company's compensation policies and practices, courts routinely hold that venue is appropriate where those companies are headquartered.[7] This matter is no different as the FAC alleges unlawful nationwide policies and

---

[7] *See, e.g., Farrior v. George Weston Bakeries Distrib., Inc.,* No. 08–cv–2705 (JFB)(WDW), 2009 WL 113774, at *4 (E.D.N.Y. Jan. 15, 2009) (where FLSA collective action raised questions about defendant company's compensation policies and practices, transfer to district where defendant's headquarters were located was warranted because, *inter alia,* substantial aspects of those policies were developed by individuals at corporate headquarters); *Earley v. BJ's Wholesale Club, Inc.,* No. 06–cv–3529 (WHP), 2007 WL 1624757, at *2–3 (S.D.N.Y. June 4, 2007) (transfer of FLSA action to district where defendant's headquarters were located was appropriate where key issue in case was nature and implementation of company-wide overtime policies); *Evancho v. Sanofi–Aventis U.S. Inc.,* No. 07–cv–00098 (SI), 2007 WL 1302985, at *3 (N.D. Cal. May 3,

practices of not paying overtime compensation to chicken catching crew members for hours over 40 in a workweek. These unlawful policies and practices are established in Illinois by Koch Corporate and disseminated to all Complexes in Mississippi, Georgia, Tennessee and Alabama. As part of Koch Corporate's self-described vertically-integrated system, third party contractors, such as Jet, conduct business with the Koch Defendants, and therefore can be deemed to reside in Illinois because this Court has personal jurisdiction over it. Illinois is the site of where the majority of the employment and operational decisions took place in this matter. Venue is plainly appropriate in this judicial district.

### 3. Venue is Proper Under Section 1391(b)(3)

The Koch Defendants contend that the Court need not consider section 1391(b)(3), and Plaintiffs largely agree, with the following caveat: one of the cases cited by the Koch Defendants raises a problem that they may not have anticipated. *See* Motion at 6 (citing *IP Innovation L.L.C. v. Lexmark Int'l*, 289 F. Supp. 2d 952, 954 (N.D. Ill. 2003). In *IP Innovation*, the Court found that defendant had failed to meet its burden of establishing that venue would be proper in the transferee court, where it had not demonstrated that one of the additional parties could be found to reside there, and that the "lack of supporting information is fatal to the motion to transfer." 289 F. Supp. 2d at 954.

Here too, the Koch Defendants have made no showing how any of the other eight Complex Defendants would be subject to personal jurisdiction or venue in their proposed transferee court in Mississippi. Indeed, under the Koch Defendants' own theory of jurisdiction, and based on the

---

2007) (in FLSA case seeking unpaid overtime, the court transferred action to the District of New Jersey, on the grounds that "many of the key witnesses [were] located in defendant's New Jersey headquarters, as well as critical documents and other evidence. Defendant state[d] that the key operational and administrative personnel who would testify as to payroll practices and company policies regarding the positions at issue [were] in New Jersey.... The majority of these individuals, though not all of them, work[ed] in defendant's Bridgewater, New Jersey headquarters.").

declarations of the seven Live Operations Managers of the non-Mississippi Complexes, none could be said to have sufficient ties to Mississippi to render them subject to the Court's personal jurisdiction there. Plaintiffs' FAC is not limited to Mississippi, but pertains to each and every one of the Complexes. Even under the Koch Defendants' theory that none of the events giving rise to the claim took place in Illinois, only one eighth of the chicken catching giving rise to the claims as alleged took place in Mississippi. To the extent the Court rejects Plaintiffs' arguments that venue is proper under Section b(1) or (2), it should find that there is no district in which any action may otherwise be brought, and hold venue to be proper in this Court, which is the Koch Defendants' corporate headquarters.

### B. The Court Should Decline To Discretionarily Transfer This Action Under the Section 1404(a) Factors

Plaintiffs have established that venue is proper in this Court. The Court should not use its discretion to transfer this matter on Section 1404 grounds, on which it previously reserved opinion. *See* Order at *7 n.3. When there is more than one proper venue, the decision whether to grant a motion to transfer is within the sound discretion of the district court. *Murray v. C.H. Robinson Worldwide, Inc*., Nos. 06 C 6509, 06 C 6557, 06 C 6631, 2007 WL 8446638, at *2 (N.D. Ill. Mar. 14, 2007). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) places discretion with this Court to adjudicate motions for transfer according to "individualized, case-by-case consideration of convenience and fairness." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, (1964)); *Lee v. Love's Travel Stops & Country Stores, Inc.*, No. 15-cv-7774, 2015 WL 6742074, at *1 (N.D. Ill. Nov. 3, 2015) (Gilbert, Mag.). "Under § 1404(a), a court may transfer a case if the moving party shows that: (1) venue was proper in the transferor district, (2)

29

venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice." *Rohde v. Cent. R.R. of Ind.*, 951 F. Supp. 746, 747 (N.D. Ill.1997). The relative weight to be accorded to each factor is not indicated in the language of § 1404(a). *Coffey*, 796 F.2d at 220 n. 3.

### 1. Defendants Have Failed To Establish that Venue Would Be Proper In Mississippi for All Koch Defendants

As a threshold matter, and as described above, the Koch Defendants have not met their burden of demonstrating how venue (or jurisdiction) would be proper over ***each*** of the Koch Defendants in Mississippi. For the reasons discussed in Section IV(A)(3), *supra*, the Court should find that the Koch Defendants have failed to meet its burden on this factor, and decline to proceed with the remainder of the analysis.

### 2. Transfer Will Not Serve The Convenience Of the Parties

In this case, matters of convenience do not weigh in favor of transfer. The Koch Defendants have "the burden of establishing, by reference to particular circumstances, that the transfer forum is clearly more convenient." *Coffey*, 796 F.2d at 219-20. Their burden in alleging *forum non conveniens*, however, is heavy. *Sinochem Int'l. Co. Ltd. v. Malaysia Int'l. Shipping Corp.*, 549 U.S. 422, 430 (2007); *see also Deb v. SIRVA, Inc.*, No. 14-2484, --- F.3d ---, 2016 WL 4245497, at *2 (7th Cir. Aug. 11, 2016) ("A heavy burden is appropriate, because [ ] if successfully invoked, the result is not a transfer to another court but a dismissal…"). "When evaluating the conveniences, the court should consider five factors: (1) the plaintiffs' choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses." *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006) (citing *Federated Dep't Stores, Inc. v. U.S. Bank Nat'l Ass'n*, No. 00 C 6169, 2001 WL 503039, at *2 (N.D. Ill. May 11, 2001)); *Amoco Oil Co. v. Mobil Oil*

*Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000).

> **a.** **Plaintiffs' Choice of Forum Should Be Given Substantial Weight**

Generally, the plaintiffs' choice of forum is given substantial weight. *Strategic Mgmt. Harmony, LLC v. Enhanced Bus. Reporting Consortium, Inc.*, No. 4:05-cv-00180-JDT-WGH, 2007 WL 2316484, at *7 (S.D. Ind. Aug. 10, 2007); *Amoco Oil Co. v. Mobil Oil Co.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000). If the plaintiff does not reside in his choice of forum, then the choice is given less deference, though it is not completely disregarded. *See Deb*, 2016 WL 4245497 at *3; *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010). Less deference is given to plaintiff's choice of forum if it has no material relation or significant connection to the facts of the lawsuit. *Id.* Here, of course, the case has been filed in the very heart of Koch Corporate's operations, and plainly has a significant relationship to the facts of the lawsuit.

The FLSA does not contain a venue designation provision. *Crouch v. Guardian Angel Nursing, Inc.*, No. 3:07–cv–00541, 2009 WL 3737887, at *6-*7 (M.D. Tenn. Nov. 4, 2009). Therefore, venue is appropriate in multiple districts "as long as a substantial part of the underlying events took place in those districts." 28 U.S.C. § 1391(a)(2). With respect to the Plaintiffs' choice of forum, Plaintiffs have chosen this district for this lawsuit as it is the central situs of the unlawful employment policies and procedures established and distributed by Koch Corporate. Plaintiffs' choice should be respected here.

> **b.** **The Situs Of Material Events Occurred In Illinois, and Nationwide, including in Mississippi**

With respect to the second factor -- the situs of material events -- Plaintiffs have established that the FLSA violations by the Koch Defendants stem from within this judicial district, as well as across the nation. As described above, the Northern District of Illinois has a substantial connection to the cause of action as the wage and employment policies and practices are ultimately decided

and controlled by Koch Corporate in this judicial district. Moreover, this is alleged as a nationwide action. Plaintiffs intend to move for conditional certification of a nationwide collective, and request that notice be sent to all of the chicken catchers who performed work for Koch across the country. At that point, Mississippi will be no more central a location than Tennessee, Georgia or Alabama.

With respect to the relative ease of access to sources of proof, Koch Defendants argue that all of the respective documents are in Mississippi, Tennessee, Georgia, and Alabama. This argument feels hollow since all policies central to this matter are established and implemented by Koch Corporate Moreover, the documents can be produced electronically, either by email, file transfer protocol site or otherwise to the offices of respective counsel. The process of gathering and producing the documents is not specific to one geographic location, and the location of the courthouse is immaterial in this regard. *See Smith v. Colonial Penn Ins. Co.*, 943 F. Supp. 782, 784 (S.D. Tex. 1996) (stating that even though relevant evidence is within close proximity to another courthouse, the inconvenience to the witnesses and parties in maintaining the case in plaintiff's choice of forum is only minimal due to advanced technology).

c.     **The Convenience of The Parties and Witnesses Does Not Favor Transfer**

With respect to the convenience of the parties and witnesses, the Koch Defendants have made no convincing case that venue in the Southern District of Mississippi would be more convenient than venue in the Northern District of Illinois. Many of the relevant witnesses, including Kochs' CEO, COO and CFO (one of whom was already deposed in Illinois), reside in Illinois. Each of the Live Operating Managers who submitted declarations will likely be deposed, and only one of those individuals resides in Mississippi. If the Court conditionally certifies a nationwide collective, witnesses will reside all over the country. The parties can cooperate on location of depositions, as they have to date, to ensure that they are convenient to both parties.

All parties have retained local counsel here, and as Koch Corporate is based in Illinois and routinely utilizes Illinois counsel, there is no burden on them. All Koch Defendants are represented by the same counsel. Moreover, pursuant to the Court's local rules, all parties may file documents via Dkt./CM. LR83.15. On the other hand, the District Court for the Southern District of Mississippi does not permit attorneys admitted *pro hac vice* to file pleadings or other documents directly with the Court's Dkt./CM system. S.D. Miss. Rule 83.1. Plaintiffs would have to engage local counsel in Mississippi and would incur additional fees and costs in so doing, which they would ultimately request be paid by Defendants pursuant to the FLSA's fee shifting provisions.

### 3.    The Public Interest Factors Do Not Weigh In Favor Of Transfer

Finally, the public interests do not weigh in favor of transfer.  First, Koch argues that the time to trial is faster in Mississippi than in this Court, but Plaintiffs are not convinced that more care could be paid to this case in Mississippi than in this Court, where all motions have been decided swiftly and with great efficiency. This Court is also intimately familiar with the issues in this case, and it would take a substantial amount of time for the transferor court to get up to speed. Given that Plaintiffs intend to file a motion for notice to potential collective action members swiftly after this motion is resolved, and given that the statute of limitations continues to toll on potential FLSA collective members' claims until they receive notice of and file a consent form with the Court, Plaintiffs would be prejudice by additional delay due to transfer. This factor does not favor Mississippi as an appropriate venue.  *See Bollinger Shipyards Lockport, L.L.C. v. Huntington Ingalls Inc.*, 2015 WL 65298, *4 (E.D. La. 2015) (court's familiarity with the case favored denying transfer). Second, Plaintiffs agree that either Court would be equally familiar with the federal Fair Labor Standards Act, and that this factor is neutral. Finally, contrary to Koch's assertions, Illinois has a substantial interest in redressing wrongs at its corporate citizens to workers across the country.

33

For these reasons, the Koch Defendants have failed to demonstrate that Section 1404(a)'s factors weigh in favor of transfer from this District to the Southern District of Mississippi. Accordingly, the Koch Defendants' motions to transfer pursuant to 28 U.S.C. § 1404(a) should be denied and this matter should remain in this Court.

### C. Plaintiffs Have Sufficiently Alleged An FLSA Claim Against All Koch Defendants Pursuant To Rule 12(b)(6)

#### 1. Legal Standard

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In deciding on a Rule 12(b)(6) motion, a court may only consider allegations in the complaint, documents attached to the complaint, and documents that are both referred to in the complaint and central to its claims. *My Canary LLC v. Susieair, LLC*, No. 16 CV 4000, 2017 WL 622235, at *4 (N.D. Ill. Feb. 15, 2017) (citing *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)). In reviewing a complaint, the Court must accept all "factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." *Hughes v. Scarlett's G.P., Inc.*, No. 15-CV-5546, 2016 WL 4179153, at *1 (N.D. Ill. Aug. 8, 2016) (quoting *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011)).

Plaintiffs are not required to "plead the elements of a cause of action along with facts supporting each element." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 517 (7th Cir. 2015). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

#### 2. Plaintiffs Have Sufficiently Alleged An Alter Ego Theory of Liability for The FLSA Claims Against All Koch Defendants

Contrary to Koch's arguments, Plaintiffs have sufficiently alleged the threshold

requirements for their FLSA claims against all of the Koch Defendants. As a primary matter, the Koch Defendants entirely ignore Plaintiffs' well pleaded allegations that Koch is one company, and that its registered corporate entities are merely a sham. Alter ego liability is a means of imposing liability for an underlying cause of action – here violation of the FLSA. *See VDF Futureceuticals, Inc. v. Lewis*, No. 1:13-cv-00407, 2013 WL 4506937, at *3 (N.D. Ill. Aug. 22, 2013).

To establish alter ego, a Plaintiff must show: "(1) unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) circumstances such that adherence to the fiction of separate corporate existence would sanction a fraud of promote injustice." *Wachovia Sec., LLC, v. Banco Panamericano, Inc.*, 674 F.3d 743, 751-52 (7th Cir. 2012). When determining if there is sufficient "unity of interest" to justify disregarding the corporate form, the Court considers the following factors:

> (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) comingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; (11) whether, in fact, the corporation is a mere façade for a dominant owner.

*Wachovia*, 674 F.3d at 752; *Judson v. Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008). However, "[n]o single factor is determinative. *Wachovia*, 674 F.3d at 752.

Plaintiffs' FAC extensively describes the nature of the Koch Defendants' relationship as one of "such a unity of interest and ownership amongst [the Koch Defendants] that the separate personalities of the companies do not exist independently." FAC ¶ 14. In particular, Plaintiffs provide factual allegations showing: (1) failure to observe corporate formalities; (2) the absence

of corporate records; (3) comingling of funds; (4) the failure to maintain arm's-length relationships among related entities; and (5) the corporation is a mere façade of the operation. In fact, Plaintiffs illustrate in great detail Koch Foods' alter egos, specifically two sections titled "The Koch Defendants" and "The Koch Defendants Act as One Entity" – a total of 12 pages of facts which stem from the written discovery and Rule 30(b)(6) depositions of Koch Defendants' corporate designees as allowed by this Court. *Id.* at ¶¶ 12-53, 62-86; Order, Dkt. No. 82.

In *VDF Futureceuticals*, this Court found that the plaintiff had sufficiently pled factual allegations demonstrating alter ego liability. 2013 WL 4506937 at *3-4. The same is true here.[8] Koch Foods uses the Koch subsidiaries as instrumentalities to conduct business and profit from it while avoiding liability. Plaintiffs extensively alleged facts to support a claim that unity of interest exists between the Koch Defendants. Among them, Plaintiffs alleged the Koch Defendants comingled funds with daily transfers of funds between accounts (FAC ¶ 25); Koch Corporate "does not independently make any money, but only profits as a result of the consolidation of its subsidiaries" (FAC ¶ 78); the ultimate decision makers across for all Koch Defendants are Joseph Grendys and Mark Kaminsky (FAC ¶¶ 72, 86); Koch Corporate employees are paid by the Koch entity in which their office is physically located – not by the Koch entity in which employs them (FAC ¶¶ 67, 74); the Koch Defendants share key managerial employees, such as Consolidation Manager, Nutritionist, Veterinarian, Safety Director, etc. (FAC ¶¶ 67, 80, 84); absence of corporate meetings and corporate minutes (FAC ¶ 20); Koch Corporate employees' ability to hire and fire

---

[8] *See also Plumbers & Pipe Fitters, Local 23 v. Kelsey Excavating, Inc.*, No. 15-C-50306, 2017 WL 467718, at *4 (N.D. Ill. February 3, 2017) (denying a Rule 12(b)(6) motion to dismiss holding plaintiff alleged sufficient facts under alter ego liability); *Sanchez v. Global Parking Mgmt., Inc.*, No. 14-cv-04611, 2015 WL 4429024, at *4 (N.D. Ill. July 20, 2015) (same); *Weiland v. AssureCare, Inc.*, No. 12-C-01947, 2013 WL 4840460, at *5-6 (N.D. Ill. Sept. 10, 2013) (same); *Railroad Maint. & Indus. Health & Welfare Fund v. Hacker*, No. 10-3305, 2011 WL 5008311, at *6-7 (C.D. Ill. Oct. 20, 2011) (same).

Koch subsidiaries' employees (FAC ¶ 74); one unified face with the maintenance of one website, the utilization of one email domain for all Koch Defendants' employees, and the use of the same logo (FAC ¶¶ 21-22, 69); sharing of supplies and product, such as feed (FAC ¶ 133).  *See also supra* Sections III(A),(B).

### 3. Plaintiffs Have Sufficiently Alleged That Defendants Are Joint Employers

In addition, even assuming that each of the Koch Defendants were, in fact, separate entities, Plaintiffs have sufficiently pleaded their claims of joint employment. As the Department of Labor recently confirmed via its guidance, the concept of joint employment should be defined expansively under the FLSA, and is "notably broader than the common law concepts of employment and joint employment, which look to the amount of control that an employer exercises over an employee." *See* Department of Labor, Administrator's Interpretation No. 2016-1 (Jan. 20, 2016) (available at https://www.dol.gov/whd/flsa/Joint_Employment_AI.htm) ("DOL Guidance"). The Supreme Court has even gone so far as to acknowledge that the FLSA's definition of an employer is "the broadest definition that has ever been included in any one act." *See In re Enterprise Rent–A–Car Wage & Hour Emp't Prac. Litig.,* 683 F.3d 462, 467–68 (3d Cir. 2012) (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n. 3 (1945)).

Although the Koch Defendants have attempted to distinguish the case, *Brown* speaks directly to Plaintiffs' claims here. As this Court noted, under the Department of Labor's regulations:

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> (1) Where there is an arrangement between the employers to share the employee's services, as for example, to interchange employees; or

(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (footnotes omitted); *see also Cuff v. Trans States Holdings, Inc.*, 768 F.3d 605, 608 (7th Cir. 2014). "A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case." 29 C.F.R. § 791.2(a)).

*Brown*, 2015 WL 7731946, at *3-4.

Here, viewing the totality of the circumstances of the whole activity, Plaintiffs have sufficiently alleged that their work simultaneously benefited all of the Koch Defendants. The chicken catching services that crew members, including Plaintiffs, perform, are integral and necessary to the functioning of Koch's integrated poultry processing, and impact Koch's financial results. FAC ¶ 88. The financial results for each Complex are consolidated with the ultimate goal of increasing the profitability for the entity as a whole. FAC ¶ 16. Moreover, the FAC alleges that each of the Koch Complex Defendants, directly or indirectly with the other Koch Defendants, established a policy to exclusively use third party contractors to supply labor for chicken catching services. *Id.* ¶¶ 75, 93-96. The FAC also alleges that each of the Koch Defendants are not disassociated with each other because each are under common control of Koch Corporate (and are actually the same corporate entity). *Id.* ¶¶ 62-86.[9]

Koch attempts to narrow *Brown's* holding, stating that the reason the Court concluded that a joint employment relationship existed was based on allegations of control of the employment

---

[9] Plaintiffs have recently learned that at least five of the Opt-In Plaintiffs also performed work for Koch in Alabama. *See* Exs. B-F. To the extent the Court is inclined to dismiss any of the other Koch Complex Defendants based on Defendants' Motion, Plaintiffs respectfully request leave to amend to include these additional Opt-In Plaintiffs as Named Plaintiffs.

practices of the two subsidiaries. Yet, the Court specifically found that the plaintiff plausibly alleged that the defendant was "acting directly or indirectly in the interest of the other entities." 2015 WL 7731946.  While the corporate structure of the entities in the two cases are obviously different, the relevant legal standard remains the same, and Plaintiffs have met their pleading burden here. The additional cases cited by Koch are factually inapposite, as the complaints in those cases contained cursory, "formulaic recitations," unlike the detailed allegations that are supported by the discovery obtained here. *See, e.g., White v. Classic Dining Acquisition Corp.*, No. 1:11-cv-712, 2012 WL 1252589, *4 (S.D. Ind. Apr. 13, 2012) ("White's Complaint may be the epitome of 'formulaic recitations.'"); *Mackereth v. Kooma, Inc.*, No. 14-04824, 2015 WL 2337273, at *7 (E.D. Pa. May 14, 2015) (noting the allegations in the complaints were legal conclusions).

Whether through alter ego or joint employer allegations, Plaintiffs have sufficiently pleaded allegations under which to state a claim against all Koch Defendants, including each of the Koch Complex Defendants. The motion to dismiss pursuant to Rule 12(b)(6) should be denied.

### D.    Plaintiffs Have Standing To Pursue Claims Against All Koch Defendants

#### 1.    Legal Standard

Standing is established when plaintiffs have (1) an injury in fact; (2) causation; and (3) redressability. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). Within the Seventh Circuit, a Rule 12(b)(1) motion to dismiss for lack of standing can only be granted when the plaintiff presents "no set of facts consistent with the complaint's allegations that could establish standing." *Cox v. Sherman Capital LLC*, No. 1:12-CV-01654-TWP, 2014 WL 4370680, at *4 (S.D. Ind. Sept. 3, 2014) (quoting *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 498 (7th Cir. 2005)).  As with a Rule 12(b)(6) motion, when reviewing a Rule 12(b)(1) motion to dismiss for lack of standing, "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's

favor." *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15-CV-5182, 2016 WL 4179150, at *4 (N.D. Ill. Aug. 8, 2016) (quoting *Lee*, 330 F.3d at 468). However, a district court may "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (citation and quotation omitted).

### 2. Plaintiffs Have Standing Based On Their Alter Ego Theory

As a primary matter, Koch again ignores Plaintiffs' alter ego theory of liability. A plaintiff may assert standing over multiple defendants through the alter ego theory. *See ADEMA Tech., Inc. v. Eiffert*, No. 12-cv-01139-CMA-BNB, 2014 WL 1099770, at *2 (D. Colo. Mar. 19, 2014) (Plaintiff has standing based on alter ego theory as it is a theory for liability, not a claim for substantive relief); *see also Int'l Fin. Servs. v. Chromas Tech. Canada, Inc.*, 356 F.3d 731, 736 (7th Cir. 2004) ("Piercing the corporate veil, after all, is not itself an action; it is merely a procedural means of allowing liability on a substantive claim."). This equitable alter ego doctrine is equally applicable in the context of a wage and hour claim. *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (summarizing the applicable doctrine in a wage and hour case, but holding that, in that complaint, the plaintiff did not adequately allege standing as plaintiff's alter ego allegations were too conclusory to survive a motion to dismiss).

In *Vasic v. PatentHEALTH, L.L.C.*, the Court held the defendants "fail[ed] to show that it is facially implausible to draw the reasonable inference that [the two defendants] are alter egos of each other based on the facts that Plaintiff alleges in his SAC." No. 13–CV–849–BAS (MDD), 2014 WL 2159268, at *5 (S.D. Cal. May 22, 2014). In the Second Amended Complaint, the *Vasic* plaintiff alleged (1) the defendants used the same headquarters address, (2) shared the same president, treasurer, and incorporator, (3) the subsidiary is wholly owned by the individual defendant and is the sole owner, (4) the defendants share the same agent for service of process;

and (5) the subsidiary defendant made a loan to the individual defendant. *Id.* at \*4.

Plaintiffs here have plausibly alleged their alter ego theory over all of the Koch Defendants to have demonstrated standing. Like *Vasic*, Plaintiffs here have provided extensive factual allegations for the theory of alter ego liability for the Koch Defendants. Among the laundry list of factual allegations, in addition to those previously recited, Plaintiffs have alleged (1) the Koch Defendants share the same corporate officers and key managerial employees (FAC ¶ 26, 28-29, 72, 77, 86), (2) share a website, logo, and email domain (FAC ¶¶ 17, 21-22), (3) holds itself out as one entity to the public (FAC ¶ 17), (4) the Koch Defendants bear the financial burden of paying employees based on their location, rather than if the employees perform any business function for that Koch entity (FAC ¶¶ 24, 74), (5) the Koch Defendants comingle their funds as Koch Corporate loans money to any Koch subsidiary whenever funds are low (FAC ¶¶ 25, 84), and (6) Koch Corporate has no other function except to manage the subsidiaries (FAC ¶ 27). *See also supra* Sections III(A), (B). Plaintiffs' allegations are not made on information and belief but rather based on the Rule 30(b)(6) testimonies taken and the documents and discovery responses provided by order of this Court. *See* Order 14-15, Dkt. No. 82; *see also* Pls.' Mem. of Law in Support of Mot. for Leave to File a First Amended Collective Compl. 2, 5.

Under Plaintiffs' alter ego theory, this case is no different from any other nationwide FLSA case, and Plaintiff need not have worked at every geographic location where a company employs similarly situated individuals in order to sufficiently plead a nationwide class, have standing to represent such class, or even have such a class certified. Courts in this Circuit routinely grant conditional certification on a nationwide basis in matters where the plaintiff brings suit against the parent company. *See, e.g., Betancourt v. Maxim Healthcare Servs., Inc.*, No. 10-C-4763, 2011 WL 1548964, at \*14 (N.D. Ill. Apr. 21, 2011) (conditionally certifying nationwide class of recruiters);

*Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 630 (W.D. Wis. 2009) (granted nationwide conditional FLSA certification and ordered that notice be sent to sales representatives who worked in 26 centers); *Jirak v. Abbott Lab., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008) (granted conditional FLSA certification and ordered that notice be sent to pharmaceutical representatives who worked nationwide). The Court should find that Plaintiffs have plausibly alleged alter ego allegations sufficient to confer standing to assert their claims against all Koch Defendants as pleaded.

### 3. Plaintiffs Have Sufficiently Pleaded An Injury Traceable To The Actions of Each Koch Defendant

Moreover, like the Plaintiffs in *Brown*, Plaintiffs here have plausibly alleged that the injury at issue, namely the Koch Defendants' failure to pay overtime based on their uniform policy to use undercapitalized third party contractors to provide labor for chicken catching services, is fairly traceable to the conduct of each of the Koch Defendants. *See Brown*, 2015 WL 7731946, at *5.

Plaintiffs allege the Koch Defendants' have a pervasive unlawful policy and practice of not paying chicken catching crew members overtime compensation for hours over 40 in a workweek and not paying the minimum wage, in violation of the FLSA. *See* FAC ¶¶ 136, 139-140, 149, 166-167. The FAC specifically alleges that the decision to exclusively use third party contractors to provide live-haul chicken catching crews to catch Koch's chickens was made after discussions on a company-wide weekly conference call, in which each of the Complex Managers, the Region VPs, and the COO of the company (also one of the sole officers and directors and ultimate manager of each of the registered Koch entities) was present, and that the decision was made with the knowledge, participation of and approval of the managers and officers of each Complex. FAC ¶¶ 94-95. In addition, contrary to Koch's assertions, Plaintiffs and crew members in one Complex may be directly working for the benefit of another Complex. The FAC alleges that the Koch Complexes also have engaged live-haul chicken catching crews to catch chickens for other Koch

42

Complexes; for example, in at least one instance, Koch used chicken catching crews in Mississippi to catch Koch Ashland Complex birds that were housed in Mississippi, and these crews were still paid on the same unlawful pay policy during that time. FAC ¶ 112. At this stage, Plaintiffs have sufficiently alleged that they have standing to bring their claims against each of the Koch Defendants.

**4. Standing Should Be Deferred Until After The Court Decides Conditional Certification**

Finally, the issue of standing for claims against the AL-TN-GA Koch Defendants is premature, and should be postponed until after the conditional certification stage. The Seventh Circuit has held that the court should decide class certification issues first and treat the class as a whole as the relevant entity for Article III purposes. *See Payton v. County of Kane*, 308 F.3d 673, 680-82 (7th Cir. 2002) *cert. denied sub nom.*, *Carroll County v. Payton*, 540 U.S. 812 (2003). This is especially true as Opt-In Plaintiffs may join the case, either through the Court's notice or otherwise, who worked for Koch at different geographic locations. The FLSA is a remedial statute designed to protect the wages of workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective, which is ensuring that every employee receives "a fair day's pay for a fair day's work"). *See Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 541 (S.D. Tex. 2008) (Ellison, J.) ("[T]he FLSA is a remedial statute, […] and the Supreme Court has acknowledged that Congress intended to give Plaintiff the advantage of lower individual costs to vindicate rights by the pooling of resources.") (internal citations and quotations omitted). The remedial nature of the FLSA and Section 216(b) weigh strongly in favor of allowing cases to proceed collectively nationwide, so that all similarly situated individuals may have an opportunity to join and pursue their claims for unpaid wages and overtime. The Court should permit Plaintiffs to demonstrate that they are similarly situated to other chicken catching crew members regardless

of Complex, and not let the Koch Defendants escape liability through use of clever corporate forms.

V.    **CONCLUSION**

The Court should deny the Koch Defendants' motion to dismiss for failure to state a claim, lack of standing and improper venue, or in the alternative, transfer.

Dated: February 23, 2017                           Respectfully submitted,

                                                   **BERGER & MONTAGUE, P.C.**


                                                   /s/ Sarah R. Schalman-Bergen
                                                   Shanon J. Carson
                                                   Sarah R. Schalman-Bergen
                                                   Camille Fundora
                                                   **BERGER & MONTAGUE, P.C.**
                                                   1622 Locust Street
                                                   Philadelphia, PA 19103
                                                   Telephone: (215) 875-3000
                                                   Facsimile: (215) 875-4604
                                                   scarson@bm.net
                                                   sschalman-bergen@bm.net
                                                   cfundora@bm.net

                                                   Katrina Carroll
                                                   Kyle Alan Shamberg
                                                   Ismael T. Salam
                                                   **LITE DEPALMA GREEMBERG, LLC**
                                                   211 W. Wacker Drive, Suite 500
                                                   Chicago, IL 60606
                                                   Telephone: (312) 750-1591
                                                   Facsimile: 973-877-3845
                                                   kcarroll@litedepalma.com
                                                   kshamberg@litedepalma.com
                                                   isalam@litedepalma.com

                                                   David A. Hughes
                                                   **HARDIN & HUGHES, LLP**
                                                   2121 14th Street
                                                   Tuscaloosa, Alabama 35401
                                                   Telephone: (205) 344-6690
                                                   dhughes@hardinhughes.com

44

*Attorneys for Plaintiffs and the Proposed Collective*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed on the ECF docket and is available for viewing and download on this 23rd day of February, 2017.

/s/ Sarah R. Schalman-Bergen

Sarah R. Schalman-Bergen